# No. 22-3106

In the United States Court of Appeals
for the Second Circuit

MARIO CERAME and
TIMOTHY MOYNAHAN,
*Plaintiffs-Appellants*,

v.

MICHAEL P. BOWLER, in his official capacity as Connecticut Statewide
Bar Counsel; and MATTHEW G. BERGER, in his official capacity
as Chair of the Statewide Grievance Committee,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Connecticut
No. 3:21cv-01502-AWT; Hon. Alvin Thompson

**APPELLANTS' OPENING BRIEF**

Richard A. Samp
  Senior Litigation Counsel
Margaret A. Little
  Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street, NW, Suite 450
Washington, DC 20036
rich.samp@ncla.legal
202-869-5210

February 24, 2023

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *Connecticut's Regulation of Attorneys* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *Connecticut's Adoption of Rule 8.4(7)* . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *Appellants' Speech Chilled Due to Fears of Enforcement Actions* . . . . . . . . 9

    *Proceedings Below* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.    APPELLANTS CERAME AND MOYNAHAN BOTH POSSESS ARTICLE III
    STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.    Rule 8.4(7) Regulates Speech Based on Both Content and
        Viewpoint and Has No Constitutionally Valid Applications . . . . . . 18

    B.    Because This Case Is at the Pleadings Stage, the Burden on
        Appellants to Demonstrate Article III Standing Is Relatively
        Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    C.    A Plaintiff's Burden to Establish Standing at the Pleadings Stage
        Is Particularly Relaxed in First Amendment Cases . . . . . . . . . . . . . 24

**Page**

D.    Appellants Have Adequately Alleged an "Actual and Well-Founded Fear" that They Will Be Targets of a Rule 8.4(7) Enforcement Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.    The Well-Founded Nature of Appellants' Fear Is Reinforced by the Many Recent Speakers Who Have Been Severely Sanctioned for  Statements on Race and Religion that Others Deemed Harassing or Discriminatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

F.    Appellants' Fears Are Particularly Well-Founded in Light of Rule 8.4(7)'s Vagueness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

II.    THE DISTRICT COURT'S REASONS FOR CONCLUDING THAT APPELLANTS LACK STANDING ARE UNPERSUASIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52


ADDENDUM - Commentary to Rule 8.4, Rules of Professional Conduct  . . . . A-1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*American Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
*Attorney Grievance Comm'n v. Markey*,
  469 Md. 485 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
*Aurenchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635, 638 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*Bell Atlantic Corp. v. Twombley,*
  550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*Carter v. HealthPort Technologies, LLC*,
  822 F.3d 47 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . 2, 12, 15, 17, 222, 28, 50
*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 45
*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
*FCC v. Fox TV Stations, Inc.*,
  567 U.S. 239 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
*Florida League of Professional Lobbyists, Inc. v. Meggs*,
  87 F.3d 457 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Foman v. Davis*,
  371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
*Greenberg v. Goodrich*,
  593 F. Supp. 3d 174 (E.D. Pa. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*Greenberg v. Haggerty*,
  491 F. Supp. 3d 12 (E.D. Pa. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*Harrell v. Florida Bar*,
  608 F.3d 1241 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28, 39
*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Index Newspapers LLC v. U.S. Marshals Serv*.,
  977 F.3d 817 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*In re Idaho State Bar Resolution*,
  (Idaho, Jan. 20, 2023),
  available at https://isc.idaho.gov/opinions/50356.pdf . . . . . . . . . . . . . . . . . . . . . 6

iii

**Page(s)**

*John v. Whole Foods Market Group, Inc.*,
 858 F.3d 732 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 50

*Knife Rights, Inc. v. Vance*,
 802 F.3d 377 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Lacewell v. Office of Comptroller of Currency*,
 999 F.3d 130 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 49

*Lopez v. Candaele*,
 630 F.3d 775 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 21, 22, 23

*Matal v. Tam*,
 137 S. Ct. 1744 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Nat'l Org. for Marriage, Inc. v. Walsh*,
 714 F.3d 682 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26, 27

*Pacific Capital Bank, N.A. v. Connecticut*,
 542 F.3d 241 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 44

*R.A.V. v. City of St. Paul*,
 505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reno v. ACLU*,
 521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Rosenberger v. Rector and Visitors of University of Virginia*,
 515 U.S. 819 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
 954 F.3d 529 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Speech First, Inc. v. Killeen*,
 968 F.3d 628 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Steel Co. v. Citizens for a Better Environment*,
 523 U.S. 82 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tingley v. Ferguson*,
 47 F.4th 1055 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Vermont Right to Life Committee, Inc. v. Sorrell*,
 221 F.3d 376 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26, 27, 42, 43

*Virginia v. American Booksellers Ass'n*,
 484 U.S. 383 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

iv

**Page(s)**

**Constitutional Provisions:**

U.S. Const., Art. III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const., Amend. XIV (Due Process Clause) . . . . . . . . . . . . . . . . . 1, 3, 11, 39

Conn. Const., Article I, Section 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes and Rules:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 12, 21, 44

Fed.R.Civ.P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 15, 50, 51

Fed.R.Civ.P. 62.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Connecticut Superior Court Rules, § 2-32(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Connecticut Rules of Professional Conduct
    Rule 8.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9, 13, 18
    Rule 8.4(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Rule 8.4(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Maryland Lawyers Rules of Professional Conduct
    Rule 8.4(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Pennsylvania Rules of Professional Conduct
    Rule 8.4(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

American Bar Association Model Rules of Professional Conduct . . . . . . . . . . . . . 5
    Rule 8.4(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

**Page(s)**

**Miscellaneous:**

*Censorship Costs a Texas University $165,000*, Alliance
    Defending Freedom (Feb. 20, 2023), available at
    https://adflegal.org/article/censorship-costs-texas-university-165000?
    sourcecode=10024836_r800&utm_source=pardot&utm_medium=email
    &utm_campaign=the_docket . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Kathleen Foody, *Hamline Univeristy under fire for art professor's
    dismissal*, Associated Press (January 13, 2023), available at
    https://apnews.com/article/education-colleges-and-universities-minnesota
    -middle-east-religion-e39841dd59ea2647a6019b4ba669bfe5 . . . . . . . . . . . . . 36

*Hamline President Keeps Digging*, The Volokh Conspiracy (Jan. 5, 2023)
    available at https://reason.com/volokh/2023/01/05/hamline-president-
    keeps-digging/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

David Lat, *The Latest (Ridiculous) Controversy at Yale Law School*,
    Original Jurisdiction (Oct. 14, 2022),
    https://davidlat.substack.com/p/the-latest-ridiculous controversy . . . . . . . . . . 34

Aaron Sibarium, *Inside the University of Pennsylvania's Precedent-Setting
    Effort To Revoke Tenure From Its Most Controversial Professor*,
    Washington Free Beacon (Feb. 13, 2023), available at
    https://freebeacon.com/campus/inside-the-university-of-pennsylvanias-
    precedent-setting-effort-to-revoke-tenure-from-its-most-controversial-
    professor/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Statement of Georgetown Dean William M. Treanor (June 2, 2022) . . . . . . . . . 34

Neil Vigdor, *Georgetown Suspends Lecturer Who Criticized Vow to Put
    Black Woman on Court*, New York Times (Jan. 31, 2022). . . . . . . . . . . . . . . 33

vi

**INTRODUCTION**

Plaintiffs-Appellants Mario Cerame and Timothy Moynahan assert a facial constitutional challenge to Rule 8.4(7), a recently adopted provision of the Connecticut Rules of Professional Conduct that took effect in January 2022. The Complaint alleges, among other things, that Rule 8.4(7) violates the First and Fourteenth Amendments because it imposes content- and viewpoint-based speech restrictions and because its overly vague terms fail to provide sufficient guidance regarding what speech is prohibited.

Rule 8.4(7) defines "professional misconduct" by a Connecticut attorney as including speech that the lawyer knows or reasonably should know "is harassment or discrimination on the basis of" any one of 15 listed characteristics. The Complaint alleges that because Cerame and Moynahan frequently speak frankly on controversial topics in their roles as members of the Connecticut bar, they fear that they may be charged with violating Rule 8.4(7). They allege that their fear of generating misconduct complaints is well-founded and has caused them during the past year to cut back on some of their more controversial statements to avoid being targeted.

The district court granted Appellees' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, ruling that the Complaint inadequately alleged that Cerame and Moynahan suffered the injury-in-fact necessary to establish their Article III standing. JA45-69. The Court held that Cerame and Moynahan failed to allege

their injuries with sufficient specificity. *See, e.g.,* JA64, 66 (stating that "the Complaint speaks only in terms of generalities"). That holding misapplied this Court's well-established Article III case law: "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to withstand a dismissal for lack of standing], for *on a motion to dismiss we presum*[e] *that general allegations embrace those specific facts that are necessary to support the claim*." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis supplied by *Carter*).

Moreover, the district court simply refused to accept at face value several of the Complaint's specific factual allegations. For example, the Complaint asserts that Cerame and Moynahan have an actual fear that they could face a misconduct complaint under Rule 8.4(7) unless they chill their speech. *See, e.g.*, JA18, ¶ 50. Despite that factual assertion, the district court held that Appellants failed to establish that their fears were "real." JA62, 63, 64, 65, 68 n.1. That holding was clear error; in reviewing the adequacy of a complaint's injury-in-fact allegations, a federal court is required to "accept[] as true all material factual allegations of the complaint," and "draw[] all reasonable inferences in favor of the plaintiff." *Carter*, 822 F.3d at 57.

2

This Court has repeatedly held that pre-enforcement First Amendment challenges to speech restrictions are subject to relaxed standing criteria because of the danger that such restrictions may chill First-Amendment-protected speech. To establish injury-in-fact, plaintiffs need only allege facts suggesting "an actual and well-founded fear that the law will be enforced against" them. *Vermont Right to Life Committee*, 221 F.3d 376, 382 (2d Cir. 2000) (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). Cerame's and Moynahan's allegations easily meet that undemanding standard.

The Court should reverse the district court decision and reinstate this case.

## JURISDICTIONAL STATEMENT

On August 29, 2022, the U.S. District Court for the District of Connecticut granted Defendants-Appellees' motion to dismiss under Fed.R.Civ.P. 12(b)(1), ruling that the court lacked-subject matter jurisdiction over the Complaint. On August 30, 2022, the court entered final judgment against Plaintiffs-Appellants and in favor of Defendants-Appellees on all claims. On September 7, 2022, Plaintiffs-Appellants filed a motion for relief from judgment under Fed.R.Civ.P. 60(b) and sought leave to file an amended complaint. On December 12, 2022, Plaintiff-Appellant filed a notice of appeal from the August 29 dismissal order and the August 30 judgment. On

3

December 20, 2022, the district court denied the motion for relief from judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether Plaintiffs-Appellants have alleged facts sufficient to establish their Article III standing to assert their challenge to Rule 8.4(7) of the Connecticut Rules of Professional Conduct as a violation of their First Amendment free-speech rights, and as overly vague in violation of their due-process rights under the Fourteenth Amendment.

## STATEMENT OF THE CASE

This case challenges the constitutionality of a provision of the Connecticut Rules of Professional Conduct (the "Rules"). Judge Alvin Thompson of the U.S. District Court for the District of Connecticut granted a Rule 12(b)(1) motion to dismiss the case, ruling that Appellants lacked Article III standing. The order granting the motion is reported at 2022 WL 3716422 and is reproduced in the Joint Appendix at JA45-69.

***Connecticut's Regulation of Attorneys.*** Under Connecticut law, only licensed attorneys are authorized to practice law within the State. The Connecticut Superior Court adopted the Rules to regulate the conduct of the State's licensed attorneys. Among other things, the Rules define activities constituting "professional

4

misconduct." Rule 8.4. Connecticut-licensed attorneys who engage in professional misconduct (without regard to where the conduct occurs) are subject to sanction, up to and including loss of their license to practice law. Rule 8.5.

The entity charged with overseeing attorney discipline in Connecticut is the 20-member Statewide Grievance Committee; Appellant Matthew G. Berger is the Chair of the Committee. Complaint ¶¶ 23-24, JA10. The Committee supervises the work of Connecticut's Statewide Bar Counsel; in 2020-22, Appellant Michael P. Bowler was the Statewide Bar Counsel. That official is charged with, among other things, reviewing all complaints alleging misconduct by a Connecticut-licensed attorney. *Id.* ¶¶ 20-22, JA10; Superior Court Rules, § 2-32(a).

The American Bar Association (ABA) has for several decades maintained "Model Rules of Professional Conduct." Many States, including Connecticut, have adopted the ABA Model Rules, in whole or substantial part. In 2016, the ABA voted to amend its Model Rules to include a new Rule 8.4(g), which reads as follows:

> It is professional misconduct for a lawyer to: ... (g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

5

Model Rule 8.4(g) has proven to be highly controversial. A significant majority of the States that have considered adopting the Rule has declined to do so; many States have expressed the view that the Rule is unconstitutional. Most recently, the Idaho Supreme Court rejected a proposal to adopt a version of Rule 8.4(g) after concluding that the proposed rule is: (1) a content- and viewpoint-based speech regulation that violates First Amendment speech rights; and (2) unconstitutionally overbroad and vague. *In re Idaho State Bar Resolution* (Idaho, Jan. 20, 2023), available at https://isc.idaho.gov/opinions/50356.pdf.

Connecticut and a small number of other States—including New Mexico, New York, Pennsylvania, and Vermont—have adopted a professional misconduct rule that is substantially similar to Model Rule 8.4(g).

***Connecticut's Adoption of Rule 8.4(7).*** In the spring of 2020, two Connecticut lawyers submitted a proposal to the Rules Committee of the Connecticut Superior Court, urging adoption of Model Rule 8.4(g) as part of the Connecticut Rules of Professional Conduct. Complaint ¶ 30, JA12.[1] At its June 5, 2020 meeting, the Rules Committee tabled the proposal for three months and asked the Connecticut Bar

---

[1] Unlike its ABA counterpart, Connecticut Rule 8.4 employs an exclusively numeric naming system. Thus, ABA Model Rule 8.4(a) is Rule 8.4(1) in the Connecticut Rules, and so on.

6

Association (CBA) to submit recommendations regarding the proposal. *Id.* ¶ 31, JA12.

On September 10, 2020, the CBA's House of Delegates voted 39-11 to support adoption of a slightly revised version of Model Rule 8.4(g). The CBA submitted that revised version in a September 11, 2020 letter to the Rules Committee (attached to the Complaint as Exhibit A, JA33-37). *Id.* ¶ 32, JA12.

The Rules Committee requested and received many comments, both pro and con, on the CBA's proposed version of a new Rule 8.4(7). Among the groups from which the Rules Committee requested comments was the Statewide Grievance Committee (SGC), chaired by Appellee Berger. By email dated December 29, 2020, Appellee Bowler submitted comments on behalf of the SGC. *Id.* ¶¶ 34-35, JA13.

A copy of the December 29, 2020 email is attached to the Complaint as Exhibit B, JA39-44. The email stated:

- "The SGC acknowledged that the CBA had the best of intentions with the proposal, hence the SGC is not taking a formal position opposing it."

- "[T]he SGC had concerns over the clarity and scope of the rule and was concerned that its language may present more problems than solutions in its application."

- "In the SGC's opinion, the terms ["discrimination," "harassment," and "conduct related to the practice of law"] are not clearly defined in either the proposal or its commentary."

7

● "The SGC noted that the current Rules of Professional Conduct are applied robustly by the SGC and Superior Court to limit and deter the conduct described [in] the proposal and its commentary."

● "Other than to observe that the proposal is constitutionally charged, the SGC will not comment on whether the proposal is constitutional under either the United States or Connecticut constitutions."

At its February 8, 2021 meeting, the Rules Committee voted 7-1 to recommend adoption of CBA's proposal (without revisions) and to submit the proposal to a public hearing—which it conducted on May 10, 2021. The Committee passed along its recommendation to the judges of the Superior Court, who adopted the proposed amendment by voice vote and without discussion at their annual meeting in June 2021. *Id.* ¶¶ 37-39, JA14.

The new Rule 8.4(7), which became effective on January 1, 2022, reads as follows:

It is professional misconduct for a lawyer to: ... (7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these rules.

The amendment also added to Rule 8.4 new Commentary, set out in ¶ 41 of the Complaint, JA14-15, and in the Addendum to this brief. The new Commentary provides a rationale for adopting Rule 8.4(7) and discusses some of its applications.

***Appellants' Speech Chilled Due to Fears of Enforcement Actions.*** Appellants Cerame and Moynahan are Connecticut attorneys who, as part of their legal practice, regularly speak out on controversial issues. Complaint ¶¶ 2, 3, 11, 12, 18, 51; JA5-9, 18. Both often speak in forceful terms when criticizing opposing points of view. Because of their use of forceful language, Cerame and Moynahan have good reason to believe that those holding opposing points of view on occasion construe their criticisms as personally derogatory or demeaning. *Id.* ¶¶ 14, 15, 19, 52; JA8, 10, 18.

The topics on which Cerame and Moynahan often speak forcefully include race and religion. *Id.* ¶¶ 13-16, 18, 51; JA8-9, 18. Both topics are directly addressed by Rule 8.4(7), which prohibits lawyers from engaging in speech that discriminates against or harasses anyone on the basis of race or religion. If Cerame and Moynahan use forceful language in discussing those topics and a listener views such speech as derogatory or demeaning, they fear that they could be charged with violating Rule 8.4(7), which (among other things) bars "severe or pervasive derogatory or

demeaning verbal or physical conduct," and speech that "manifests bias or prejudice on the basis of" race or religion. *Id.* ¶¶ 13-16, 18, 50, 51; JA8-9, 18.

The reasonableness of their fear is well supported. For example, one of the two initial sponsors of Rule 8.4(7) testified that Rule 8.4(7) will serve as an important tool for sanctioning lawyers who engage in derogatory or demeaning speech and provided an example of what she deemed actionable speech. *Id.* ¶¶ 53-55, JA18-19. Cerame and Moynahan's views on race and religion can fairly be described as outside the mainstream, and recent events confirm that those expressing outside-the-mainstream views on race, religion, or similar controversial topics often face severe sanctions, without regard to whether the speaker intends to harass or discriminate against anyone. Rule 8.4(7) is particularly worrisome to Cerame and Moynahan because it expands the scope of potential misconduct charges. While under previous versions of the Rules, a lawyer could be sanctioned only for "knowingly" engaging in misconduct, a lawyer may now be sanctioned under Rule 8.4(7) if he or she "reasonably should know" that his or her speech "is harassment or discrimination."

Because of their reasonable fear of misconduct charges, Cerame's and Moynahan's speech has been chilled; they have felt compelled to censor their own speech to reduce the chances that they will be charged. *Id.* ¶¶ 5, 6, 50, 56, 63, 75, 79; JA6-7, 18-19, 22, 24. The Complaint sets out multiple examples of the types of

10

statements that prudent attorneys will refrain from expressing because they reasonably fear a misconduct charge under Rule 8.4(7). *Id.* ¶ 58, JA20. The need to limit one's speech is particularly acute because Rule 8.4(7) is so vague—it does not clearly specify what speech qualifies as "attorney misconduct." *Id.* ¶¶ 61-63, JA21-22. Indeed, in response to the Standing Committee's request for comments on what became Rule 8.4(7), both Appellee Bowler and Appellee Berger expressed "concerns over the clarity and scope of the rule," and opined that key terms in the rule "are not clearly defined in either the proposal or its commentary." *Id.* ¶ 36, JA13. Because Cerame and Moynahan cannot determine precisely what sorts of speech would run afoul of Rule 8.4(7), they have felt compelled to err on the side of caution and refrain from making any statement that a reasonable person might consider even arguably covered by the Rule. *Id.* ¶¶ 61-63, JA21-22.

***Proceedings Below.*** Cerame and Moynahan filed suit in November 2021, seeking declaratory and injunctive relief against Rule 8.4(7). JA5-44. The Complaint sets out four claims. First, it alleges that Rule 8.4(7) violates the First Amendment in *all* its potential applications because it imposes content-based and viewpoint-based speech restrictions, serves no compelling state interest, and is not narrowly tailored to serve any compelling interests that Connecticut might articulate. *Id.* ¶¶ 72-76, JA23-24. Second, it alleges that the Rule violates the Fourteenth Amendment's

11

prohibition against overly vague laws. The Rule's lack of clarity deprives Cerame and Moynahan of the ability to discern in advance what speech is prohibited, and improperly grants enforcement officials too much discretion to decide for themselves when to initiate misconduct proceedings against attorney speakers. *Id.* ¶ 79, JA24. Third, the Complaint alleges that the Rule violates the Connecticut Constitution's free-speech provision—Article I, Section 4. *Id.* ¶¶ 83-85, JA25. Fourth, it alleges that the Rule violates separation-of-powers principles embodied in the Connecticut Constitution. *Id.* ¶¶ 87-90, JA25-26.

Defendants responded by filing a motion under Fed.R.Civ.P. 12(b)(1) to dismiss the case for lack of subject matter jurisdiction. ECF#14. The motion contended, among other things, that the Complaint did not allege facts sufficient to demonstrate injury-in-fact and thus that Cerame and Moynahan lacked standing to sue.[2] The district court granted the motion on August 29, 2022 and directed that judgment be entered for Defendants. JA45-69. The court entered judgment the next day. JA70.

---

[2] The motion to dismiss was a "facial" motion. A Rule 12(b)(1) motion challenging subject-matter jurisdiction can be either "facial" or "fact- based." *Carter*, 822 F.3d at 56. A motion is fact-based if the defendant proffers evidence beyond the pleadings to support its no-jurisdiction claim. *Id.* at 57. In opposition to such a motion, the plaintiff will need to come forward with evidence of its own to controvert that presented by the defendant. *Ibid.* But when, as here, the motion relies solely on the complaint and attached exhibits, it is referred to a "facial" motion; in responding to such motions, "the plaintiff has no evidentiary burden." *Id.* at 56.

The court briefly cited Second Circuit case law indicating that this Court applies "relaxed" standing rules in the context of pre-enforcement First Amendment claims.  JA59-59.  But its subsequent consideration of Cerame's and Moynahan's injury allegations displays no indication that it actually applied those relaxed rules. Nor does the court's analysis declare any awareness that, in *all* lawsuits, a lesser showing of injury is required at the pleadings stage than at later stages in a lawsuit.

The court held that the Complaint fails to show, with respect to either Cerame or Moynahan, that "Rule 8.4(7) creates a real and imminent fear that his rights are chilled."  JA62, 64.  The court recited various of the statements that (the Complaint alleges) Cerame and Moynahan routinely utter and then declared them inadequate to establish injury-in-fact because, based on its reading of the Rule, they do not "fall within the explanation of what constitutes discrimination or harassment for purposes of Rule 8.4."  JA62, 64, 66.  The court faulted both Cerame and Moynahan for failing "to identify specific harmful verbal or physical conduct manifesting bias or prejudice in which he expects to engage,"  JA62, 64-65, and instead "speak[ing] only in terms of generalities."  JA62, 64.

The court dismissed the significance of the Rule 8.4(7) co-sponsor's testimony regarding the Rule's broad scope.  JA 66-68.  It stated, "[N]either plaintiff identifies any 'derogatory or demeaning' speech or conduct in which they have engaged and/or

13

intend to engage in the future that could be expected to elicit a reaction like that of the attorney sponsor," JA67-68, a reaction that is described in ¶ 54 of the Complaint.

The district court noted that the Complaint sets out multiple examples of the types of statements that prudent attorneys will refrain from expressing because they reasonably fear a misconduct charge under Rule 8.4(7). JA67 (citing Complaint ¶58, JA20). But the court discounted the significance of Paragraph 58 because the Complaint does not expressly allege that Cerame or Moynahan themselves planned to make any of the cited statements. JA68 n.1. It acknowledged that in their opposition to the motion to dismiss, Cerame and Moynahan *did* expressly allege that the cited statements are the sort of speech they normally engage in (*e.g.*, telling jokes that some members of a protected group might deem offensive). *Ibid.* But the Court refused to credit an allegation made in their brief but not expressly included in the Complaint, reasoning that "parties may not amend a complaint to cure standing deficiencies by means of an opposition to a motion to dismiss." *Ibid*.

Seven days after entry of judgment against them, Cerame and Moynahan filed a Rule 60(b) motion for relief from judgment, seeking leave to file an amended complaint. ECF#30. Attached to the motion was their proposed amended complaint. JA71-94. Despite requests from counsel for Cerame and Moynahan that the court rule quickly on the motion, more than three months elapsed without a decision.

14

Cerame and Moynahan filed their notice of appeal on December 12, 2022. JA95-96. Eight days later, the district court issued a one-paragraph order denying the Rule 60(b) motion, ruling that the notice of appeal "divests this court of jurisdiction." JA97.[3]

## SUMMARY OF ARGUMENT

A plaintiff bringing a pre-enforcement First Amendment challenge against an enactment need not demonstrate to a certainty that he will be subject to an enforcement action in order to establish the requisite injury-in-fact, but need only demonstrate that he has "an actual and well-founded fear that the law will be enforced against [him]." *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Cerame and Moynahan have adequately alleged that they have "actual and well-founded fear" of a Rule 8.4(7) enforcement action. The district court's dismissal of their claims for lack of standing should be reversed.

When this matter proceeds to trial, Appellants will bear an evidentiary burden to demonstrate their standing. But at this preliminary stage of proceedings, they bear no evidentiary burden whatsoever. *Carter*, 822 F.3d at 56. They need only present

---

[3] The district court's statement that the notice of appeal divested it of jurisdiction was erroneous. Fed.R.Civ.P. 62.1(a) provides a district court with three options under these circumstances: (1) defer considering the motion; (2) deny the motion on the merits; or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

15

"general factual allegations of injury resulting from the defendant's conduct." *Ibid*. "General" factual allegations suffice because "on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

Appellants' alleged injury is not that a Rule 8.4(7) enforcement proceeding is imminent. Rather, they allege that they are injured because they are forced to chill their own speech in order to reduce the likelihood they will be charged with violating Rule 8.4(7). This Court has held that a present-day chill on free-expression suffices to satisfy the injury-in-fact requirement, provided that the chill derives from "an actual and well-founded fear" of an enforcement action. *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

Appellants have alleged that they have an *actual* fear of an enforcement action, and that allegation must be accepted as true at the pleadings stage. Cerame and Moynahan have made a broad range of factual allegations—both general and specific—in support of their claim that their fear is "well-founded." Indeed, in light of the large number of individuals—lawyers and non-lawyers alike—who have been sanctioned in recent years for making statements to which someone in one of the groups protected by Rule 8.4(7) took offense, it is likely that Cerame's and Moynahan's fears are widespread among members of the legal profession.

16

Those fears are heightened by the vagueness of many of the terms employed by Rule 8.4(7). A vague speech restriction fails to provide a person of ordinary intelligence a reasonable opportunity to know what it prohibited. To guard against running afoul of a vague speech restriction, such individuals will chill a greater degree of their constitutionally protected speech than they would when attempting to steer clear of a more clearly written speech restriction. For that reason, courts are particularly apt to determine that a self-censoring plaintiff has demonstrated the reasonableness of his fears of enforcement when the challenged restriction is at least "arguably vague." *Harrell v. Florida Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010). Given that Appellees Bowler and Berger have publicly expressed "concerns over the clarity" of Rule 8.4(7), Cerame's and Moynahan's decisions to censor their speech to avoid sanctions under the Rule is eminently reasonable—and thereby provides them with the necessary standing to challenge the Rule.

## ARGUMENT

### I. APPELLANTS CERAME AND MOYNAHAN BOTH POSSESS ARTICLE III STANDING

The district court dismissed the Complaint on the ground that Appellants Cerame and Moynahan did not adequately allege an injury-in-fact and thus lack Article III standing to present their constitutional claims. That ruling is subject to *de novo* review by this Court. *Carter*, 822 F.3d at 56.

17

### A. Rule 8.4(7) Regulates Speech Based on Both Content and Viewpoint and Has No Constitutionally Valid Applications

To fully appreciate the extent of the injury to Appellants caused by Rule 8.4(7), it is important to focus on the broad restrictions that the Rule imposes on attorney speech. Rule 8.4(7) prohibits "harassment" or "discrimination" on the basis of any of 15 characteristics of the targeted individual.

The Commentary to the Rule makes clear that the prohibition encompasses harassment and discrimination that is expressed in any form—either through conduct or speech. "Discrimination" is defined as including "harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories." "Harassment" is defined as including "severe or pervasive derogatory or demeaning verbal or physical conduct."

Rule 8.4(7) expands considerably the scope of attorney activity subject to the Rules of Professional Conduct. The previous Commentary to Rule 8.4 stated that attorneys were subject to discipline for misconduct "in the course of representing a client." That language has been replaced by Rule 8.4(7)'s statement that the Rule applies to verbal or physical conduct "related to the practice of law." The Commentary's definition of "related to the practice of law" makes clear that Rule 8.4(7) expands the scope of coverage well beyond activities undertaken during the course of representing a client:

18

> Conduct related to the practice of law includes representing clients; interacting with businesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or professional activities or events in connection with the practice of law.

Moreover, Rule 8.4(7) now subjects attorneys to discipline for harassing or discriminatory speech even when they do not "know" that their speech is harassing or discriminatory. That is another major expansion from the pre-2022 Rules. Rule 8.4(4) has long defined professional misconduct as including engaging "in conduct that is prejudicial to the administration of justice." Commentary accompanying Rule 8.4(4)—eliminated in conjunction with the adoption of Rule 8.4(7)—stated that while an attorney may be charged with engaging in conduct "prejudicial to the administration of justice" by acting in a discriminatory manner, he or she may be so charged only if he or she "knowingly" manifests "bias or prejudice" through his or her words or conduct. Rule 8.4(7) eliminates the "knowingly" requirement and permits attorneys to be sanctioned based on a determination by bar authorities that the attorney "reasonably should [have] know[n]" that his or her speech constituted harassment or discrimination.

Appellants allege that Rule 8.4(7) is an unconstitutional content- and viewpoint-based speech regulation that has *no* valid applications. It is content-based because it regulate speech based on its content—it limits its restrictions to speech

concerning 15 characteristics. It is viewpoint-based because it regulates speech based on the viewpoint being expressed—it prohibits speech that expresses disparaging views of another on the basis of any of the Rule's 15 listed characteristics but permits laudatory comments on the same subjects. The Supreme Court has consistently condemned viewpoint-based speech restrictions. *See, e.g., Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (where rule "is viewpoint-based, it is unconstitutional"); *Matal v. Tam*, 137 S. Ct. 1744, 1765 (2017) (Kennedy, J., concurring in part and concurring in the judgment) ("[I]t is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys."); *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829-30 (1995) (law found to discriminate based on viewpoint is an "egregious form of content discrimination," which is "presumptively unconstitutional").

Connecticut undoubtedly has a strong interest in maintaining the integrity of its legal system. But it may not pursue that goal by seeking to enforce a rule (Rule 8.4(7)) that is facially unconstitutional because it is not viewpoint-neutral. Because Rule 8.4(7) discriminates on the basis of viewpoint, it may not constitutionally be enforced *at all*, even for the purpose of regulating speech or conduct not otherwise entitled to any First Amendment protection. *R.A.V. v. City of St. Paul*, 505 U.S. 377,

382-85 (1992). If Connecticut wishes to maintain the integrity of its court system, Appellants contend that it must do so using viewpoint-neutral regulations.

## B. Because This Case Is at the Pleadings Stage, the Burden on Appellants to Demonstrate Article III Standing Is Relatively Light

At issue in this appeal is whether Appellants Cerame and Moynahan possess Article III standing to seek injunctive and declaratory relief against Rule 8.4(7). Article III, § 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies," terms intended to confine courts to addressing matters "traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). Standing to sue "is part of the common understanding of what it takes to make a justiciable case." *Ibid.*

The three elements that constitute the "irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560 (1992), are well established. The plaintiff must demonstrate: (1) "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation—a fairly traceable connection between the plaintiff's injury and the complained of conduct"; and (3) "redressability—a likelihood that the requested relief will redress the alleged injury." *Citizens for a Better Environment*, 523 U.S. at 103 (citations omitted).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and

21

degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Accordingly, the burden imposed on a plaintiff to establish standing is far lighter at the pleading stage than at later stages of the litigation. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Ibid*.

Curiously, in discussing what a plaintiff must allege in its complaint to satisfy its burden of establishing standing at the pleadings stage, the district court quoted the first of the two *Lujan* passages cited above but not the second. JA57. In other words, the district court's opinion suggests that Appellants were required to submit to the court at least some "degree of evidence" to meet their burden—when in fact "the plaintiff has no evidentiary burden" in opposing a facial Rule 12(b)(1) motion challenging subject-matter jurisdiction. *Carter*, 822 F.3d at 56. The court reinforced its erroneous suggestion by adding the following sentence: "The party asserting subject matter jurisdiction 'bears the burden of proving subject matter jurisdiction *by a preponderance of the evidence*.'" JA54 (quoting *Aurenchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (emphasis added)).

At no point in its opinion did the district court acknowledge that Cerame and Moynahan faced a lighter burden in demonstrating their standing at the pleadings

22

stage. More importantly, in determining that the allegations of the Complaint did not suffice to establish standing, the district court never stated that it arrived at that determination only after applying the liberal standing criteria applicable at the pleadings stage.

The district court held that the Complaint's factual allegations did not suffice to establish standing for either Appellant because the Complaint " speaks only in terms of generalities." JA62, 64. As Appellants explain in more detail *infra*, that characterization is inaccurate; the Complaint's factual allegations contain considerable detail explaining why Cerame's and Moynahan's fear of a Rule 8.4(7) complaint is well-founded. But at least as importantly, the district court's criticism of "generalities" in the Complaint is misplaced. As *Lujan* explains, "general factual allegations of injury" suffice to meet a plaintiff's burden at the pleadings stage. A complaint is not subject to dismissal at the pleadings stage so long as it contains enough factual allegations to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 570 (2007); *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (plaintiff "need only generally allege facts that, accepted as true, make his alleged injury plausible").

When considering *any* Rule 12(b) motion to dismiss, courts are directed to "accept[] as true all material factual allegations of the complaint, and draw[] all

23

reasonable inferences in favor of the plaintiff." *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021) (quoting *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020)). In setting out the "Legal Standards" governing its consideration of Appellees' motion to dismiss, the district court never mentioned an understanding that it was required to accept the Complaint's material factual allegations as true and to draw all reasonable inferences in favor of Cerame and Moynahan. JA54. Moreover, the court's discussion of the allegations of the Complaint declined to accept the truthfulness of the Complaint's factual allegations and gave no indication that it ever drew any inferences in favor of Cerame and Moynahan. The court even asserted the right to "consider evidence outside the pleadings," *ibid*, even though Appellees' motion was a facial challenge and Appellees submitted no evidence to the court in connection with their motion.

## C. A Plaintiff's Burden at the Pleadings Stage to Establish Standing Is Particularly Relaxed in First Amendment Cases

When, as here, plaintiffs assert a pre-enforcement First Amendment challenge to speech restrictions, the already lenient standing requirements at the pleadings stage are even further relaxed. As the Ninth Circuit has explained, "The 'unique standing considerations' in the First Amendment context 'tilt dramatically toward a finding of standing when a plaintiff brings a pre-enforcement challenge." *Tingley v. Ferguson*,

24

47 F.4th 1055, 1066-67 (9th Cir. 2022) (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).

Article III standing requires a plaintiff to demonstrate that "he has sustained or is immediately in danger of sustaining some direct injury" as a result of the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). That standard can at times be daunting for plaintiffs seeking injunctive relief against a government policy that has not yet been enforced against them and thus may not yet have had any impact on them. They are often denied standing unless they can demonstrate that enforcement of the policy against them is truly imminent. *Ibid.*

But First Amendment claimants often suffer the requisite injury long before they are the direct targets of government policy. The fear of being punished for violating a government speech restriction causes many such claimants to chill their speech to reduce the likelihood of being targeted. And that chilling of speech, so long as it arises from a well-founded fear, is a present-day injury that satisfies the injury-in-fact requirement. *Tingley*, 47 F.4th at 1067 (stating that "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury").

The Second Circuit has repeatedly rejected the certainly-impending-enforcement standard espoused by Appellees in the district court in opposition to

25

Cerame's and Moynahan's Article III standing claims. This Court instead looks to whether the plaintiff's speech is being chilled by his well-founded fears:

> A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has "an actual and well-founded fear that the law will be enforced against" it.

*Vermont Right to Life Committee*, 221 F.3d at 382 (quoting *American Booksellers*, 484 U.S. at 393). *See also American Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) (quoting *Vermont Right to Life Committee*'s "actual and well-founded fear" standard); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) (same); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (stating that the Supreme Court has "set[ ] a low threshold" for establishing standing based on fear of enforcement and "is quite forgiving to plaintiffs seeking such preenforcement review").

Moreover, the Court has repeatedly stated explicitly that it applies more relaxed standing criteria in First Amendment cases than in other cases in which a plaintiff alleges that fear of government enforcement has caused him to forgo the exercise of rights. *See American Booksellers Found.*, 342 F.3d at 101 (stating that "[t]he standard for [establishing standing to bring] non-First Amendment claims is slightly higher" than for First Amendment claims); *Nat'l Org. for Marriage*, 714 F.3d at 689 (stating that "we assess pre-enforcement First Amendment claims, such as the ones

26

[plaintiff] brings, under somewhat relaxed standing and ripeness rules"). *Nat'l Org. for Marriage* explained that the Court's special solicitude for First Amendment claimants is born of its recognition of the unique dilemma faced by those who believe a speech restriction is constitutionally impermissible:

> [W]ithout the possibility of pre-enforcement challenges, plaintiffs contesting statutes or regulations on First Amendment grounds "face an unattractive set of options if they are barred from bringing a facial challenge": refraining from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law.

*Ibid.* (citing *Florida League of Professional Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996)).

Nor is it appropriate for courts to second-guess the plaintiff's fear by parsing the challenged statute for indications that it is less threatening than the plaintiff believes. For purposes of determining standing, the issue is whether the plaintiff's fear that he will be targeted arises from a reasonable interpretation of the statute, not whether the court agrees with that interpretation. As this Court has explained:

> If a plaintiff's interpretation of a statute is "reasonable enough and under that interpretation the plaintiff may "legitimately fear that it will face enforcement of the statute," then the plaintiff has standing to challenge the statute.

*Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 241, 350 (2d Cir. 2008) (quoting *Vermont Right to Life*, 221 F.3d at 383).

27

The Second Circuit's relaxed standing requirements in First Amendment cases are consistent with decisions from other federal appeals courts. *See, e.g., Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement"); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) ("A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not based on a fear of future injury that itself [is] too speculative to confer standing.") (citations omitted); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (stating that a plaintiff may demonstrate standing by "show[ing] a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result"); *Harrell*, 608 F.3d at 1255 ("[W]e apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced.").

### D. Appellants Have Adequately Alleged an "Actual and Well-Founded Fear" that They Will Be Targets of a Rule 8.4(7) Enforcement Action

The complaint includes many factual allegations regarding Plaintiffs' fear of enforcement action, why that fear is reasonable, and why that fear has caused them to refrain from certain types of speech related to their practice of law, in an effort to reduce the likelihood that they will be the targets of a Rule 8.4(7) enforcement action.

28

Complaint ¶¶ 11-19, 50-63, JA 7-10, 14-18. Those factual allegations must be accepted as true for purposes of this motion to dismiss. Considering those allegations in the light most favorable to Plaintiffs, they suffice to meet Plaintiffs' minimal pleadings-stage burden of demonstrating an "actual and well-founded fear" of an enforcement action.

The Complaint alleges that Cerame and Moynahan have an actual fear "that they may be sanctioned [under Rule 8.4(7)] for the sorts of statements they have made in the past." *Id.* ¶¶ 5, 50; JA7, 18. That factual allegation must be accepted as true for purposes of the motion to dismiss. The district court repeatedly found that Appellants failed to establish a "real" fear, suggesting that the court did not believe the allegations of the Complaint. JA62, 64, 65. That finding is clearly erroneous. The only relevant consideration at the pleadings stage is whether the plaintiff has made the relevant factual allegations. Appellants allege that they fear a Rule 8.4(7) enforcement action, and that allegation must be accepted as true.

The only issue that remains is whether the Complaint satisfactorily alleges that their fear is "well-founded." Numerous factual assertions support the "well-founded" allegation:

- Both Cerame and Moynahan regularly speak out on issues of public concern as part of their practice of law—both in connection with legal proceedings and in forums unconnected to their representation of clients (*e.g.,* participating in bar association, business, and professional

29

activities such as panel discussions, know-your-rights training, networking events, legal seminars, press releases, speeches, and continuing legal education). *Id.* ¶¶ 2, 3, 11, 12, 18, 51; JA5-9, 51.

- Both Cerame and Moynahan often speak in forceful terms when criticizing opposing points of view. Because of their use of forceful language, Cerame and Moynahan reasonably believe that those holding opposing points of view may well on occasion construe their criticisms as personally derogatory or demeaning. *Id.* ¶¶ 14, 15, 19, 52; JA8, 10, 18.

- The topics on which Cerame and Moynahan often speak forcefully include race and religion. Both topics are directly addressed by Rule 8.4(7), which prohibits lawyers from harassing or discriminating against anyone on the basis of race or religion. If Cerame and Moynahan use forceful language in discussing those topics and a listener views such speech as derogatory or demeaning, they reasonably fear that they could be charged with violating Rule 8.4(7), which (among other things) bars "severe or pervasive derogatory or demeaning verbal or physical conduct," and speech that "manifests bias or prejudice on the basis of" race or religion. *Id.* ¶¶ 13-16, 18, 50, 51; JA8-9, 18.

- Cerame and Moynahan have set out in Paragraph 58 numerous examples of speech that is fully protected by the First Amendment but that prudent members of the Connecticut bar will be reluctant to express because they reasonably fear that doing so could result in an attorney misconduct complaint by those who deem the speech discriminatory. The cited examples include "[t]elling jokes to other attorneys that the speaker does not intend to be taken seriously but that some members of a protected group deem offensive." JA20. Paragraph 58 does not say so explicitly, but Cerame and Moynahan include themselves among the "members of the Connecticut bar" who, in the wake of Rule 8.4(7), refrain from engaging in the sorts of First Amendment-protect speech described in Paragraph 58. A "reasonable inference" that should be drawn from Paragraph 58 "in favor of the plaintiff," *Carter*, 822 F3d at 57, is that Paragraph 58 reasonably conveys that Appellants refrain from engaging in the speech described therein based on a well-founded fear that doing so could result in a misconduct complaint.

The language of Rule 8.4(7) sweeps broadly and should cause reasonable Connecticut attorneys to fear being charged with misconduct for saying virtually anything that reflects negatively on individuals with respect to one of the Rule's 15 protected categories.  The Rule prohibits speech that constitutes "harassment" or "discrimination."  But even if an attorney does not consider his or her speech to constitute harassment or discrimination, he or she can still be charged with misconduct if bar authorities later determine that he or she "should [have] know[n]" that the speech harassed or discriminated against another.  Given the Rule's breadth, it is certainly reasonable for Cerame and Moynahan—two attorneys who normally speak vehemently on a variety of topics, including race and religion—to determine that they should refrain from making controversial statements for fear that they otherwise could face misconduct charges.

Appellants' belief that Rule 8.4(7) is directed at speech of the sort in which they occasionally engage is reinforced by statements made by key supporters of the Rule.  For example, the two Connecticut attorneys who were the principal sponsors of Rule 8.4(7), "MW" and "AG," testified in support of their proposed rule at a hearing conducted in May 2021 by the Rules Committee of the Connecticut Superior Court.  Complaint ¶ 54, JA18-19.

31

In support of her argument that the proposed rule should be adopted, AG recounted a heated conversation she had with a white male lawyer at a recent bar-related event. According to AG (who is African-American), she spoke in favor of "racial justice" measures in the wake of the murder of George Floyd by a police officer. The other attorney responded by calling her a "race pandering nitwit" who was "suffering from black entitlement." AG testified that the other attorney's speech constituted improper racial discrimination and that "this conduct should never be okay." *Ibid*.

AG's testimony is illuminating; it demonstrates the sorts of speech that leading sponsors of Rule 8.4(7) are targeting for sanction. The words AG attributed to the unnamed white male attorney are both provocative and critical of orthodox views held by many civil-rights supporters—precisely the sort of language that Appellants seek to employ. *Id.* ¶ 53, JA18. AG's testimony makes plain that supporters of Rule 8.4(7) wish to silence such speech, and the words uttered to AG arguably would run afoul of the Rule if spoken today by a Connecticut attorney.[4] Those words are unquestionably fully protected by the First Amendment (at least outside of a court

---

[4] *See* Commentary to Rule 8.4(7) (defining prohibited "harassment" as including "severe or pervasive derogatory or demeaning verbal or physical conduct"). Calling someone a "race pandering nitwit" who is "suffering from black entitlement" at a bar event arguably qualifies as "severe ... derogatory or demeaning verbal ...conduct."

32

proceeding and in the absence of a commercial relationship between the two participants, such as employer-employee), yet the overt threat to seek sanctions under Rule 8.4(7) against anyone using such language renders Cerame's and Moynahan's fear of speaking in that manner "well-founded."

### E. The Well-Founded Nature of Appellants' Fear Is Reinforced by the Many Recent Speakers Who Have Been Severely Sanctioned for Statements on Race and Religion that Others Deemed Harassing or Discriminatory

That Appellants have adequately alleged a "well-founded fear" of disciplinary charges if they continue to speak forcefully on religious and racial issues is well illustrated by the many recent, well-publicized incidents in which individuals—lawyers and non-lawyers alike—have been severely sanctioned for making statements that others deemed offensive.

The saga of Ilya Shapiro, a prominent conservative legal scholar, is particularly illuminating. Shapiro was suspended from his position at Georgetown University Law School in 2022 (and effectively forced to resign) after he tweeted criticism of President Biden for considering only African-American women to fill an existing Supreme Court vacancy and said that a male appeals court judge of South Asian ancestry was superior to all available female African-American candidates. Neil Vigdor, *Georgetown Suspends Lecturer Who Criticized Vow to Put Black Woman on Court*, NEW YORK TIMES (Jan. 31, 2022). Shapiro's statement was

33

condemned by Georgetown officials as "antithetical to the work that we do at Georgetown Law to build inclusion, belonging, and respect for diversity. They have been harmful to many in the Georgetown Law community and beyond." Statement of Georgetown Dean William M. Treanor (June 2, 2022). If even a prominent scholar like Shapiro can suffer severe sanctions for expressing dissenting opinions on racial issues because they allegedly inflict "harm" on members of protected groups, Appellants' fear that they might be sanctioned under Rule 8.4(7) for expressing similar views is fully justified.

In Appellants' home State of Connecticut, the Associate Dean of Yale Law School in October 2021 accused a Native American law student of "harassment" and "discrimination" against Black students and threatened sanctions against him—including seeking to *prevent his eventual admission to the bar*—unless he wrote a letter of apology for having sent friends an invitation to a "trap house" party co-sponsored by the Federalist Society. David Lat, *The Latest (Ridiculous) Controversy at Yale Law School*, ORIGINAL JURISDICTION (Oct. 14, 2021), https://davidlat.substack.com/p/the-latest-ridiculous-controversy.

The University of Pennsylvania has initiated dismissal proceedings against a well-known tenured, conservative law professor, Amy Wax, based on provocative statements she has made outside the classroom on race-related issues. Those seeking

her dismissal allege that her statements—not directed at any individual—constitute racial discrimination against students. *See* Aaron Sibarium, *Inside the University of Pennsylvania's Precedent-Setting Effort To Revoke Tenure From Its Most Controversial Professor*, Washington Free Beacon (Feb. 13, 2023), available at https://freebeacon.com/campus/inside-the-university-of-pennsylvanias-precedent-s etting-effort-to-revoke-tenure-from-its-most-controversial-professor/.

The University of North Texas fired a mathematics professor, Dr. Nathaniel Hiers, for writing a joke on a chalkboard in a faculty lounge. Hiers noticed that someone had placed flyers in the lounge, urging faculty members to be careful not to commit "microaggressions," which the flyer defined as "verbal and nonverbal behaviors" that "communicate negative, hostile, and derogatory messages to people rooted in their marginalized group membership" and stated that "America is a melting pot" is an example of a microaggression. When the flyers remained in the lounge for an extended period of time, Hiers wrote on the chalkboard, "Please don't leave garbage lying around," and drew an arrow pointing to the flyers. Hiers was fired because his statement was deemed racially hostile. *See*, *Censorship Costs a Texas University $165,000*, Alliance Defending Freedom (Feb. 20, 2023), available at https://adflegal.org/article/censorship-costs-texas-university-165000?sourcecode=

10024836_r800&utm_source=pardot&utm_medium=email&utm_campaign=the_docket.

This past fall, Hamline University in Minnesota fired an art history professor, Erika Lopez Prater, after she showed her students a famous 14th-century art work depicting the prophet Muhammad. Before doing so, she provided written notice to her students of her intent to display the picture so that students who did not wish to see the picture could avoid doing so. A Muslim student nonetheless complained that she was deeply offended by the display, and the university fired the professor in response to the complaint. *See* Kathleen Foody, *Hamline Univeristy under fire for art professor's dismissal*, Associated Press (January 13, 2023), available at https://apnews.com/article/education-colleges-and-universities-minnesota-middle-east-religion-e39841dd59ea2647a6019b4ba669bfe5. In defending his decision to fire Prater, Hamline's President stated:

> Students do not relinquish their faith in the classroom. To look upon an image of the prophet Muhammad, for many Muslims, is against their faith. ... For those of us who have been entrusted with the responsibility of educating the next generation of leaders and engaged citizens, it was important that our Muslim students, as well as other students, feel safe, supported, and respected both in and out of our classrooms.

*See Hamline President Keeps Digging*, The Volokh Conspiracy (Jan. 5, 2023) available at https://reason.com/volokh/2023/01/05/hamline-president-keeps-digging/.

Cerame regularly "speaks critically of Scientology and other religious practices he views as harmful to society." Complaint ¶ 15, JA8. When an art history professor

is fired for speech deemed disrespectful of Muslim students despite not intending to offend or criticize anyone, Cerame's fear that he might be disciplined under Rule 8.4(7) if he continues his outspoken criticism of Scientology is "well-founded."

Maryland indefinitely suspended the law licenses of two attorneys for maintaining for seven years a private email exchange (on their employer's website) in which they shared comments and jokes deemed sexually and racially offensive by bar authorities, even though they never disseminated the emails to outsiders. *Attorney Grievance Comm'n v. Markey*, 469 Md. 485 (2020). The Maryland Court of Appeals stated that any punishment less than an indefinite suspension would be "inconsistent with our goals of protecting the public and the public's confidence in the legal profession by deterring other lawyers from engaging in similar misconduct" and that even "making a stray offensive comment" would violate Rule 8.4(e) of the Maryland Lawyers' Rules of Professional Conduct. *Id.* at 523.[5] In light of *Markey* and similar decisions throughout the country, Appellants' fear that they could be disciplined for telling jokes that even arguably could be deemed harassing or discriminatory is "well-founded."

---

[5] Maryland Rule 8.4(e) states that it is "professional misconduct for an attorney to ... knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice."

37

A federal district court has permanently enjoined enforcement of Pennsylvania Rule of Professional Conduct 8.4(g), finding that the rule is a viewpoint-based speech restriction that violates the First Amendment and is unconstitutionally vague. *Greenberg v. Goodrich*, 593 F. Supp. 3d 174 (E.D. Pa. 2022). Pennsylvania Rule 8.4(g) closely parallels Rule 8.4(7) albeit is somewhat less restrictive of speech—it only applies to attorneys who "knowingly" engage in harassment or discrimination. Before issuing an injunction, the court carefully considered the plaintiff's standing. It concluded at both the summary judgment and preliminary injunction stages, based on the plaintiff's injury claims that were largely indistinguishable from Cerame's and Moynahan's allegations, that the plaintiff adequately demonstrated injury-in-fact and Article III standing. *Id.* at 187-191; *Greenberg v. Haggerty*, 491 F. Supp. 3d 12, 19-25 (E.D. Pa. 2020). The court agreed that Pennsylvania Rule 8.4(g) caused the plaintiff to refrain from saying things he reasonably believed could result in a misconduct investigation, stating, "Rule 8.4(g)'s language ... will hang over Pennsylvania attorneys like the sword of Damocles." *Id.* at 24.

Cerame and Moynahan called both *Greenberg* decisions to the attention of the district court in connection with Appellees' motion to dismiss. The district court made no effort to respond to the *Greenberg* court's well-reasoned injury-in-fact finding, failing even to cite the *Greenberg* decisions in its dismissal order.

### F. Appellants' Fears Are Particularly Well-Founded in Light of Rule 8.4(7)'s Vagueness

Cerame's and Moynahan's fears of an enforcement action are heightened by the vagueness of many of the terms employed by Rule 8.4(7). An overly vague speech restriction violates the Due Process Clause by failing to provide a person of ordinary intelligence fair notice regarding what speech is prohibited. *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

To guard against running afoul of a vague speech restriction, prudent speakers will chill a greater degree of their constitutionally protected speech than they would when attempting to steer clear of a more clearly written speech restriction. For that reason, courts are particularly apt to determine that a self-censoring plaintiff has demonstrated the reasonableness of his fears of enforcement when the challenged restriction is at least "arguably vague." *Harrell*, 608 F.3d at 1254.

Appellants contend that Rule 8.4(7) is sufficiently vague that it cannot withstand due-process challenge. Complaint ¶¶ 61-63, 78-80, JA21-22, 24. At the very least, the Rule is *arguably* vague, thereby supplying Appellants with the injury-in-fact necessary to support his Article III standing to challenge the Rule.

Among the many vague terms included in Rule 8.4(7), the terms "harassment" and "discrimination" are particularly vague. "Discrimination" is defined as including "harmful verbal or physical conduct directed at an individual or individuals that

39

manifests bias or prejudice on the basis of one or more of the protected categories." But how is an attorney to determine what constitutes "harmful" speech? The Rule does not say. Even truthful speech can harm its target, yet truthful speech is fully protected by the First Amendment. The testimony of AG, the co-sponsor of Rule 8.4(7), indicates that she interprets "harmful" speech as including calling an African-American a "race pandering nitwit," *id*. ¶ 54, JA19 —an interpretation that equates "harmful" speech with any speech that harms the sensibilities of the recipient. An attorney will need to censor a vast quantity of their speech to guard against prosecutions based on such a broad interpretation of "discrimination."

"Harassment" is defined as including "severe or pervasive derogatory or demeaning verbal or physical conduct." The definition is silent regarding how "severe" or "pervasive" the derogatory or demeaning speech must be before it meets the definition of "harassment." AG unquestionably believes that the words directed at her by a white attorney at a bar function were "severe." Other Connecticut attorneys are likely to be less thin-skinned and to define "severe" in a more limited fashion. But the vagueness of the definition exacerbates Cerame's and Moynahan's fears of an enforcement action. They have no idea how broadly Connecticut bar authorities are likely to interpret the word "harassment," a dilemma that requires them

40

to censor their speech to a greater degree to account for the possibility that AG's definition will prevail at the Statewide Grievance Committee.

Moreover, Appellees apparently share Cerame's and Moynahan's belief that Rule 8.4(7) employs vague terms. In December 2020, the Rules Committee of the Superior Court wrote to the State Grievance Committee to request the SGC's comments on proposed Rule 8.4(7). Complaint ¶ 35. Appellee Bowler responded to the Rules Committee on behalf of the SGC (chaired by Appellee Berger) on December 29, 2020. The letter expressed concerns regarding the proposal's vague language: "'[T]he SGC had concerns over the clarity and scope of the rule and was concerned that its language may present more problems than solutions in its application"; and "In the SGC's opinion, the terms ['discrimination,' 'harassment,' and 'conduct related to the practice of law'] are not clearly defined in either the proposal or its commentary." *Id.* ¶ 36 & Exh. B; JA13, 39-44. Despite the SGC's concerns, the Rules Committee and the judges of the Superior Court adopted proposed Rule 8.4(7) without further amendment. The reasonableness of Plaintiffs' fears that they could face enforcement proceedings under an impermissibly vague Rule is readily apparent when even the SGC, a body charged with enforcing the Rule, concedes that critical terms in the Rule "are not clearly defined."

41

## II. THE DISTRICT COURT'S REASONS FOR CONCLUDING THAT APPELLANTS LACK STANDING ARE UNPERSUASIVE

The district court held that Appellants failed to establish that they are suffering injury-in-fact and thus lack Article III standing. JA45-69. It dismissed the Complaint without leave to amend and entered judgment for Appellees. None of the arguments proffered by the court in support of its ruling are persuasive.

The court stated that plaintiffs raising a pre-enforcement First Amendment challenge to a speech restriction must, to establish injury-in-fact, show "a real and imminent fear of such chilling"—that is, a chilling of the plaintiffs' "right to free expression." JA60. It then concluded that neither Cerame nor Moynahan showed that "Rule 8.4(7) creates a real and imminent fear that his rights are chilled." JA62, 64.

The district court's standard deviates significantly from the standard consistently applied by this Court and garbles the relevant language. This Court has consistently applied the actual-and-well-founded-fear standard explained in Section I.C:

> A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has "an actual and well-founded fear that the law will be enforced against" it.

*Vermont Right to Life Committee*, 221 F.3d at 382 (quoting *American Booksellers*, 484 U.S. at 393).

The district court's standard badly confuses the meaning of the word "chilled" and thereby focuses on the wrong factors. By stating that it would examine whether Cerame's and Moynahan's "rights are chilled," the district court made clear its belief that the relevant "chill" is a chill on the plaintiffs' First Amendment right to free expression. JA60. That misunderstanding caused the court's injury-in-fact analysis to focus inappropriately on the merits of Appellants' First Amendment claims rather than on whether Appellees' (allegedly wrongful) actions have injured Appellants.

Contrary to the district court's understanding, the word "chill" refers to an individual's decision to censor his own speech in response to a government speech regulation. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 871 (1997) (stating that a vague speech regulation "raises special First Amendment concerns because of its obvious *chilling effect on free speech*") (emphasis added). The injury-in-fact analysis properly focuses on the fear of an enforcement action, not (as the district court assumed) on a fear that speech rights (or speech) are being chilled. It is a given that the plaintiff has censored/chilled his own speech; the issue for purposes of Article III standing is whether the plaintiff is doing so based on an actual and well-founded fear of an enforcement action.

43

The district court held with respect to Cerame that "[n]one of the situations he describes in general terms in the Complaint fall under the description of severe or pervasive derogatory or demeaning verbal conduct." JA62. Similarly, it held that "the conduct described by Moynahan in general terms does not fall within the explanation of what constitutes discrimination or harassment for purposes of Rule 8.4." JA64. The district court in effect issued a decision on the merits under the guise of a ruling on standing—the court held that, based on its interpretation of "discrimination" and "harassment," Cerame and Moynahan's past speech and conduct has not violated Rule 8.4(7).

Such rulings are out of place in connection with a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The district court's sole focus should have been on whether Appellants have an actual and well-founded fear of a misconduct charge, but it never directly addressed that issue.

Moreover, the court failed to adhere to this Court's directive that it should resolve the issue of standing based on Appellants' reasonable interpretation of Rule 8.4(7). *See Pacific Capital Bank*, 542 F.3d at 350 ("If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation the plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has standing to challenge the statute."). Appellants' interpretation of Rule 8.4(7) is that

44

its operative terms ("harassment" and "discrimination") are so vaguely defined that a person of ordinary intelligence can only guess at what speech is proscribed. Appellees are in no position to challenge the reasonableness of that interpretation, given that they both opined in 2020 that the terms "harassment" and "discrimination" "are not clearly defined." Complaint ¶ 36, JA 13. Appellees do not dispute that they intend to enforce Rule 8.4(7), and "[c]ourts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). Given Appellants' knowledge that Rule 8.4(7) will be enforced against *some* speech but that the Rule's vagueness prevents them from knowing what speech is actually proscribed, they have a well-founded fear that their forceful manner of speaking could result in a misconduct charge unless they censor their own speech. The district court never directly responded to that allegation because it failed to undertake any of the analysis described above.

The district court faulted each Appellant for failing to "identify specific harmful verbal or physical conduct manifesting bias or prejudice in which expects to engage." JA62, 64-5. But it makes little sense to require a plaintiff to identify precisely the prohibited speech he would utter but for the prohibition, when the gravamen of his complaint is that he lacks fair notice of what is prohibited. *Knife*

*Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015), directly undercuts the specific-speech requirement imposed by the district court. The Court rejected New York City's claim that a plaintiff facially challenging a criminal statute "must specifically identify, by make and model, the common folding knives they wish to sell or possess to demonstrate standing," because the statute's vague language "d[id] not allow them to determine what is proscribed." *Id.* at 386 n.5. Under the numerous Second Circuit First Amendment decisions cited above, it suffices for purposes of standing for Plaintiffs to allege that they harbor a "well-founded" fear that one of the hundreds of forceful statements they make in any given year will give rise to a Rule 8.4(7) misconduct proceeding.

The district court noted that the Commentary to Rule 8.4(7) states that a lawyer's speech does not violate the Rule "if it is protected under the first amendment." JA63, 65. The court stated that this Commentary "reflects an awareness of and sensitivity to the need avoid" enforcing the Rule in a manner that undercuts constitutional rights, and thus "weakens" Appellants' argument that "they have a real and imminent fear." JA63. But as the Complaint explains at ¶ 57, "That boilerplate language is largely meaningless; it provides Cerame and Moynahan with no constitutional protection that they would not otherwise possess." JA19. Moreover, as explained above, Rule 8.4(7) is a content- and viewpoint-based speech

46

restriction that is unconstitutional in *all* its applications. Despite the absence of any constitutional applications, Appellees are nonetheless committed to enforcing Rule 8.4(7), thereby demonstrating their commitment to violating the First Amendment rights to which the Rule 8.4(7) Commentary gives lip service.

The district court acknowledged that AG, the co-sponsor of Rule 8.4(7), testified that an attorney who calls another attorney "a race pandering nitwit" at a bar event should be deemed to have violated the Rule. The court did not challenge Appellants' contention that such speech is fully protected by the First Amendment. But the court held that even if the Rule were interpreted in the manner suggested by AG, Appellants would still lack injury-in-fact because they have not identified "any 'derogatory or demeaning' speech or conduct in which they have engaged and/or intend to engage" that is equivalent to calling another attorney "a race pandering nitwit." JA67-68.

That holding ignores the Complaint's factual allegations. For example, the Complaint alleges that Moynahan "has outspokenly opposed efforts by some educators to adopt curricula based on critical race theory—in particular, teaching students that systemic racism is endemic, that American culture is based on white privilege and supremacy, and that 'diversity' and 'equity' are cultural imperatives." Complaint ¶ 18, JA 9. Moynahan does not allege that he has ever called anyone a

47

"race pandering nitwit," but he does allege that he "often speaks in forceful terms when criticizing opposing points of view" and that "[t]hose expressing opposing points of view may on occasion construe Moynahan's criticisms as personally derogatory or demeaning." *Id.* ¶ 19, JA10. The district court does not explain why, if AG's broad interpretation of Rule 8.4(7) is accurate, individuals such as Appellants who speak forcefully on controversial issues should not be fearful that they will be the targets of a misconduct complaint.

The district court also acknowledged that Cerame and Moynahan have set out in Paragraph 58 (JA20) numerous examples of speech that is fully protected by the First Amendment but that prudent members of the Connecticut bar will be reluctant to express because they reasonably fear that doing so could result in an attorney misconduct complaint by those who deem the speech discriminatory. JA67. But the court held that the allegations set out in Paragraph 58 do not strengthen Appellants' well-founded-fear claim because the Complaint does not "allege that they have engaged or will engage in the future" in any of the speech described in Paragraph 58. JA68. The court recognized that Appellants' brief opposing the Rule 12(b)(1) motion to dismiss states explicitly that the speech described in Paragraph 58 is the sort of speech they normally engage in but will now refrain from expressing because of their fear of a misconduct charge. JA68 n.1. But the court refused to credit that statement,

48

arguing that "parties may not amend a complaint to cure standing deficiencies by means of an opposition to a motion to dismiss." *Ibid*.

The district court's analysis overlooks the basic rules governing Rule 12(b) motions to dismiss. Courts are directed to "accept[] as true all material factual allegations of the complaint, and draw[] all reasonable inferences in favor of the plaintiff." *Lacewell*, 999 F.3d at 140. One "reasonable inference" to be drawn in this instance is that when Appellants alleged that Rule 8.4(7) will cause "members of the Connecticut bar" to refrain from engaging in the First Amendment-protected speech listed in Paragraph 58, they included themselves within the group of Connecticut attorneys who would censor their own speech. Appellants had no reason to make the allegations included in Paragraph 58 other than to bolster their injury claims. If the district court had any doubt as to the intended inference, Appellants eliminated it by stating explicitly in their brief opposing dismissal that they had stopped engaging in the sorts of speech described in Paragraph 58. Opposition Br. at 21.[6]

---

[6] Cerame's and Moynahan's opposition brief elaborated on their Paragraph 58 self-censorship as follows: "[T]hey enjoy telling jokes they find humorous, including jokes that relate to one or more of the 15 protected groups. While they never tell such jokes with an intent to be derogatory or demeaning to listeners, they recognize that some individuals might consider the jokes derogatory or demeaning—giving rise to Rule 8.4(7) misconduct complaints. To avoid such complaints, since January 2022 Cerame and Moynahan have censored their speech of that nature." *Ibid.*

The district court erred by refusing to draw the requested inference and subsequently ordering immediate entry of judgment without providing Appellants any opportunity to amend the Complaint to add the allegation that the court said could not be inferred from Paragraph 58 as initially drafted. Its holding contravened the rule that "general allegations embrace those specific facts that are necessary to support the claim." *Carter*, 822 F.3d at 58.[7]   Moreover, given the court's acknowledged awareness that Appellants intended their Paragraph 58 allegation to be read more broadly than the court was willing to construe the allegation, the liberal intent of the pleadings rules required the court, at the very least, to include a leave-to-amend provision in its dismissal order. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.").

Appellants responded to the district court's entry of judgment by filing a Rule 60(b) motion for relief from judgment in order to seek leave to file an amended complaint. Appellants' proposed amended complaint, JA71-94, would have added new factual allegations regarding their self-censorship and their well-founded fear of misconduct charges; in particular, it would have made explicit that they are among

---

[7] Even without taking into account the injury allegations contained in Paragraph 58, the Complaint easily satisfies "the low threshold required to plead injury in fact." *John*, 858 F.3d at 738. The Paragraph 58 allegations make Appellants' Article III standing claim just that much more compelling.

the members of the Connecticut bar who are refraining from engaging in the types of First Amendment-protected speech outlined in Paragraph 58 of the Complaint. JA86-87.

The district court's entry of judgment without providing an opportunity to seek leave to amend and its later actions suggest a concerted effort by the court to prevent any amendment. Despite Appellants' requests that the court rule quickly on the Rule 60(b) motion, more than three months elapsed without a decision. Wishing to avoid further delay, Appellants filed their notice of appeal on December 12, 2022. The court immediately thereafter issued an order declaring that the notice of appeal had deprived it of jurisdiction to consider the Rule 60(b) motion and denied the motion on that basis. JA97. Although (as explained *supra* at 14 n.3) the court's ruling that it lacked jurisdiction to consider the Rule 60(b) motion was legal error, Appellants have chosen not to file a separate appeal from denial of the motion.[8] This sequence of events nonetheless provides further evidence that the district court was intent on dismissing the case on Article III standing grounds and did so without applying the lenient pleading standards that apply in all cases, and that are particularly applicable to First Amendment cases.

---

[8] Appellants determined that a separate appeal would not be worth the candle, given that the only relief it could hope to obtain from the second appeal would be a remand directing the district court to consider the merits of the Rule 60(b) motion.

51

**CONCLUSION**

Appellants Mario Cerame and Timothy Moynahan respectfully request that the Court reverse the district court's dismissal of their Complaint for lack of subject matter jurisdiction and remand this case to the district court for further proceedings.

Respectfully submitted,

 /s/ Richard A. Samp
Richard A. Samp
   Senior Litigation Counsel
Margaret A. Little
   Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street, NW, Suite 450
Washington, DC 20036
rich.samp@ncla.legal
202-869-5210

Dated: February 24, 2023

52

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2023, I electronically filed the opening brief of Appellants with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/CF users and that service will be accomplished by the appellate CM/ECF system.


 /s/ Richard A. Samp
Richard A. Samp

## <u>CERTIFICATE OF COMPLIANCE</u>

I am an attorney for Appellants Mario Cerame and Timothy Moynahan.

Pursuant to Fed.R.App.P. 32(a)(7), I hereby certify that the foregoing brief of

Appellants is in 14-point, proportionately spaced Times New Roman type. According

to the word processing system used to prepare this brief (WordPerfect X8), the word

count of the brief is 11,996, not including the table of contents, table of authorities,

certificate of service, and this certificate of compliance.


 /s/ Richard A. Samp
 Richard A. Samp

# ADDENDUM

# Connecticut Rules of Professional Conduct
## Commentary to Rule 8.4

Discrimination and harassment in the practice of law undermine confidence in the legal profession and the legal system. Discrimination includes harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories. Not all conduct that involves consideration of these characteristics manifests bias or prejudice; there may be a legitimate nondiscriminatory basis for the conduct.

Harassment includes severe or pervasive derogatory or demeaning verbal or physical conduct. Harassment on the basis of sex includes unwelcome sexual advances, requests for sexual favors and other unwelcome verbal or physical conduct of a sexual nature.

The substantive law of antidiscrimination and antiharassment statutes and case law should guide application of paragraph (7), where applicable. Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law. Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).

A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution.

Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or professional activities or events in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity, equity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (7). Moreover, no disciplinary violation may be found where a lawyer exercises a peremptory challenge on a basis that is permitted under substantive law. A lawyer does not violate paragraph (7) by limiting the scope or subject matter of the lawyer's practice to members of a particular segment of the population in accordance with these rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5 (a). Lawyers should also be mindful of their professional

A1

obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause.  See Rule 6.2 (1), (2) and (3).  A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities. See Rule 1.2 (b).

A2