# 22-3106

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

MARIO CERAME, TIMOTHY C. MOYNAHAN,
*Plaintiffs - Appellants*,

v.

MICHAEL P. BOWLER, in his official capacity as Connecticut Statewide Bar Counsel, MATTHEW G. BERGER, in his official capacity as Chair of the Statewide Grievance Committee
*Defendants - Appellees*,

On Appeal from the United States District Court
for the District of Connecticut, No. 3:21-cv-1502

**Brief of *Amicus Curiae* Hamilton Lincoln Law Institute
in Support of Plaintiffs-Appellants and Reversal**

Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
(610) 457-0856

*Attorney for* Amicus Curiae
*Hamilton Lincoln Law Institute*

## Corporate Disclosure Statement (FRAP 26.1)

Hamilton Lincoln Law Institute ("HLLI") is a nonprofit law firm incorporated under the laws of the District of Columbia. HLLI does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole. HLLI is operated by a volunteer Board of Directors.

Table of Contents

Corporate Disclosure Statement (FRAP 26.1)...................................................................... i
Table of Authorities ............................................................................................................ iii
Interest of Amicus Curiae ..................................................................................................... 1
Federal Rule of Appellate Procedure 29 Statement ........................................................... 1
Summary of Argument ......................................................................................................... 2
Argument................................................................................................................................ 3
   I.     Plaintiffs have sufficiently pled that Rule 8.4(7) would chill a reasonable speaker in their shoes.................................................................................................................. 3
   II.    The district court erred by deciding the issue against the plaintiffs before the parties engaged in discovery. ....................................................................................... 8
Conclusion............................................................................................................................ 11
Fed R. App. P. 32(g) Certificate of Compliance ............................................................... 12
Certificate of Service ........................................................................................................... 13

# Table of Authorities

Cases

*Communidad Hispana de Locust Valley v. Town of Oyster Bay*,
 868 F.3d 104 (2d Cir. 2017) .................................................................................. 6

*Greenberg v. Goodrich*,
 593 F. Supp. 174 (E.D. Pa. 2022) ................................................................. *passim*

*Greenberg v. Haggerty*,
 491 F. Supp. 3d 12 (E.D. Pa. 2020) .............................................................. *passim*

*Gualandi v. Adams*,
 385 F.3d 236 (2d Cir. 2004) ................................................................................ 10

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981) ................................................................................................ 7

*Hedges v. Obama*,
 724 F.3d 170 (2d Cir. 2013) ............................................................................. 7, 9

*John v. Whole Foods Mkt. Grp., Inc.*,
 858 F.3d 732 (2d Cir. 2017) .................................................................................. 8

*Knife Rights, Inc. v. Vance*,
 802 F.3d 377 (2d Cir. 2015) ................................................................................ 10

*Nat'l Org for Marriage v. Walsh*,
 714 F.3d 682 (2d Cir. 2013) .................................................................................. 6

*Pacific Capital Bank v. Connecticut*,
 542 F.3d 341 (2d Cir. 2008) .................................................................................. 7

*Picard v. Magliano*,
 42 F.4th 89 (2d Cir. 2022) ............................................................................ *passim*

*Speech First v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) ................................................................................ 7

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) .............................................................................................. 6

*United States v. Stevens*,
    559 U.S. 460 (2010) ............................................................................................... 7-8

*Vermont Right to Life Committee, Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000) ................................................................................. 6, 10

Rules and Statutes

Conn. R. Prof. Cond. 8.4(7) ............................................................................................*passim*

Fed. R. App. P. 29(a)(4)(E) ..................................................................................................... 1

Fed. R. Civ. P. 12(b) ................................................................................................................ 8

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 10

Other Authorities

Blackman, Josh,
    *Judge David Stras Was Protested At Duke Law School*,
    THE VOLOKH CONSPIRACY (Sept. 30, 2021, 5:06 PM),
    https://reason.com/volokh/2021/09/30/judge-david-stras-was-
    protested-at-duke-law-school/ ...................................................................................... 4

Ekins, Emily,
    *The State of Free Speech and Tolerance in America,*
    CATO INSTITUTE (Oct. 31, 2017), https://www.cato.org/survey-
    reports/state-free-speech-tolerance-america#understanding-attitudes-
    toward-free-speech .......................................................................................................... 4

Gruber, Christine,
    *An Academic Is Fired Over a Medieval Painting of the Prophet Muhammad,*
    NEW LINES MAGAZINE (Dec. 22, 2022),
    https://newlinesmag.com/argument/academic-is-fired-over-a-medieval-
    painting-of-the-prophet-muhammad/ ................................................................... 4-5

Kennedy, Randall & Eugene Volokh,
    *The New Taboo: Quoting Epithets in the Classroom and Beyond,*
    49 CAPITAL UNIV. L. REV. 1 (2021) ........................................................................... 5

*LAWSUIT: Professor suspended for redacted slurs in law school exam sues University of Illinois Chicago* (Jan. 27, 2022), https://www.thefire.org/news/lawsuit-professor-suspended-redacted-slurs-law-school-exam-sues-university-illinois-chicago .................................................................................................. 5

Richardson, Patrick,
*KU Law School Says ADF Discussion of the First Amendment is 'Hate Speech'*, THE SENTINEL (Oct. 25, 2022), https://sentinelksmo.org/ku-law-school-says-adf-discussion-of-the-first-amendment-is-hate-speech/ ................... 4

Tarkington, Margaret,
*"Breathing Space to Survive" —the Missing Component of Model Rule 8.4(g)*, 50 HOFSTRA L. REV. 597 (2022) ............................................................ 6

Volokh, Eugene,
*The Law School Acknowledges That the Racial and Gender References on the Examination Were Deeply Offensive,*
THE VOLOKH CONSPIRACY (Jan. 15, 2021, 7:05 PM), https://reason.com/volokh/2021/01/15/tenured-law-prof-apparently-suspended-for-racial-harassment-lawsuit-problem-on-a-civil-procedure-exam .................................................................................................... 5

Whittington, Keith,
*Academic Freedom Alliance Letter to San Diego State University,*
THE VOLOKH CONSPIRACY (Mar. 8, 2022, 11:27 AM), https://reason.com/volokh/2022/03/08/academic-freedom-alliance-letter-to-san-diego-state-university/ ........................................................ 5

## Interest of Amicus Curiae

Hamilton Lincoln Law Institute ("HLLI") is a public interest organization dedicated to protecting free markets, free speech, limited government, and separation of powers against regulatory abuse and rent-seeking. In separate litigation, HLLI represents a First Amendment attorney, suing to enjoin the enforcement of a similar anti-bias ethics rule in Pennsylvania. *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020); *Greenberg v. Goodrich*, 593 F. Supp. 3d 174 (E.D. Pa. 2022), *appeal pending* No. 22-1733 (3d Cir.). The Eastern District of Pennsylvania denied the enforcement officials' motion to dismiss, and granted our client a preliminary injunction and ultimately summary judgment. *Id.* The *Greenberg* court concluded that an attorney who was reasonably chilled from speaking on controversial topics at CLEs by the threat of professional liability has standing to pursue injunctive relief against enforcement of that newly adopted rule. 491 F. Supp. 3d at 19-25; 593 F. Supp. 3d at 187-91. HLLI is particularly troubled by the District of Connecticut's contrary conclusion, closing the courthouse doors to First Amendment plaintiffs before they even had the opportunity engage in the type of discovery that occurred in *Greenberg*.

HLLI files this amicus brief in support of reversal of the district court's decision. Counsel for both parties to this appeal have consented to the filing.

## Federal Rule of Appellate Procedure 29 Statement

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), HLLI affirms that no counsel for a party authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting the brief, and no person

other than amicus, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief

**Summary of Argument**

The standard for plaintiffs who wish to have an Article III court hear a pre-enforcement challenge to a law that stifles plaintiffs' First Amendment rights is "quite forgiving." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (internal quotation omitted). They must merely show (1) that they wish to engage in constitutionally protected activity, (2) that the law they wish to enjoin enforcement of "*arguably* proscribe[s]" that activity, and (3) that there is a credible threat of enforcement. *Id.*

The decision below misapplies the tripartite test. It erroneously looks to whether the plaintiffs' intended speech was "*in fact* proscribed" by Rule 8.4(7), rather than whether it was *arguably* proscribed. *Id.* Quite simply, plaintiffs' view that the Rule 8.4(7) could be applied to penalize their speech "is not outside the realm of the 'arguable'" — as evidenced by the Eastern District of Pennsylvania's divergent conclusions in *Greenberg*. *Id.* at 100. And the decision below fails to "presume" a credible threat of enforcement "as long as the relevant [law] is recent and not moribund." *Id.* at 98 (internal quotation omitted).

Making matters worse, the district court immediately arrived at its conclusion that plaintiffs had offered "nothing more than an abstract, subjective fear that their rights are chilled" at the motion to dismiss stage, before allowing plaintiffs an opportunity to test through discovery the defendants' views on Rule 8.4(7). JA 68. In *Greenberg*, HLLI engaged in written discovery that helped to confirm the objective

chilling effect of the rule on HLLI's client. 593 F. Supp. 3d at 192, 197, 225; *see* Exhibits 1 & 2 to Motion for Summary Judgment, No. 20-cv-3822, Dkt. 65-3, 65-4 (E.D. Pa. Nov. 16, 2021). At bottom, the premature dismissal of plaintiffs' case for lack of jurisdiction compounded the failure to properly apply the *Picard* test and to properly draw all factual inferences in favor of the non-moving party. This Court should reverse.

## Argument

### I. Plaintiffs have sufficiently pled that Rule 8.4(7) would chill a reasonable speaker in their shoes.

In their complaint, plaintiffs plead that they intend to speak on controversial legal and political topics (*e.g.,* relating to hate speech, race-centered education, *etc.*), including repeating harsh, bigoted, or off-color language used by the clients they have defended. JA 7-10. They plead that they, and other attorneys, will be chilled by Rule 8.4(7)'s threat of liability for "derogatory and demeaning" speech or speech "directed at an individual that manifests bias or prejudice." JA 18. They plead that proponents of the rule intend the rule to target speech of the sort plaintiffs engage in. JA 18-19.

Plaintiffs have pled a justiciable controversy under the standard for prospective First Amendment challenges. *See Greenberg*, 491 F. Supp. 3d at 23-25 (holding that plaintiff who wished to present CLE speeches on controversial topics such as hate speech, that would include mentioning epithets and slurs, would be objectively chilled by Pennsylvania's anti-bias ethics rule). Nearly half of the public (43%) believes that defending the right to engage in racist speech is as objectionable as the racist speech itself. Emily Ekins, *The State of Free Speech and Tolerance in America*, CATO INSTITUTE (Oct.

31, 2017), *available at* https://www.cato.org/survey-reports/state-free-speech-tolerance-america#understanding-attitudes-toward-free-speech. There are scores of real-world examples of listeners imputing bias or bigotry to speakers expressing controversial legal views or mentioning of certain epithets. *Greenberg*, 593 F. Supp. 3d at 189 (relying on the "lengthy list of similar presentations that faced significant public outcry"). To name but a few: Judge Edith Jones was subject to an ethics complaint and subsequent disciplinary investigation for stating that members of certain racial groups commit crimes at rates disproportionate to their population. *Id.* at 182. A professor of law was accused of homophobic bias for supporting religious freedom accommodation laws and writing amicus briefs opposing gay marriage. *Id.* at 182-83. A notable LGBTQ+ advocacy group accused Judge David Stras of "spreading a discriminatory message" when he advocated for an absolutist view of the First Amendment. Josh Blackman, *Judge David Stras Was Protested At Duke Law School*, THE VOLOKH CONSPIRACY (Sept. 30, 2021, 5:06 PM), https://reason.com/volokh/2021/09/30/judge-david-stras-was-protested-at-duke-law-school/. The University of Kansas's law school labeled a talk about the Establishment Clause as "hate speech." Patrick Richardson, *KU Law School Says ADF Discussion of the First Amendment Is 'Hate Speech'*, THE SENTINEL (Oct. 25, 2022), https://sentinelksmo.org/ku-law-school-says-adf-discussion-of-the-first-amendment-is-hate-speech/. Hamline University branded as "Islamophobic" and terminated a professor of religion who displayed a depiction of Muhammad during a classroom lesson. Christine Gruber, *An Academic Is Fired Over a Medieval Painting of the Prophet Muhammad*, NEW LINES MAGAZINE (Dec. 22,

2022), https://newlinesmag.com/argument/academic-is-fired-over-a-medieval-painting-of-the-prophet-muhammad/.

Academics who have simply mentioned certain hateful slurs in the classroom when quoting from texts or legal opinions have faced accusations of bias and even university discipline. *See* Randall Kennedy & Eugene Volokh, *The New Taboo: Quoting Epithets in the Classroom and Beyond,* 49 CAPITAL UNIV. L. REV. 1 (2021); Keith E. Whittington, *Academic Freedom Alliance Letter to San Diego State University*, THE VOLOKH CONSPIRACY (Mar. 8, 2022, 11:27 AM), https://reason.com/volokh/2022/03/08/academic-freedom-alliance-letter-to-san-diego-state-university/ (university removed Philosophy professor who showed slide with examples of racial epithets in his class on Philosophy, Racism and Justice). One law school dean even condemned a civil procedure professor who used an expurgation of epithets ("n\_\_\_" and "b\_\_\_") on his final exam, ultimately suspending him and forcing him into a sensitivity training course that uses exactly the same redacted slur in the training materials. Eugene Volokh, *The Law School Acknowledges That the Racial and Gender References on the Examination Were Deeply Offensive*, THE VOLOKH CONSPIRACY (Jan. 15, 2021, 7:05 PM), https://reason.com/volokh/2021/01/15/tenured-law-prof-apparently-suspended-for-racial-harassment-lawsuit-problem-on-a-civil-procedure-exam; *LAWSUIT: Professor suspended for redacted slurs in law school exam sues University of Illinois Chicago* (Jan. 27, 2022), https://www.thefire.org/news/lawsuit-professor-suspended-redacted-slurs-law-school-exam-sues-university-illinois-chicago.

Yet without considering the closest case on point (*Greenberg*), the district court below concluded that 8.4(7)'s bar on "derogatory and demeaning" speech failed to

create "a real and imminent fear" that plaintiffs' rights are chilled. JA 62-65. This conclusion comprises multiple errors.

*First*, the district court zeroed on whether it thought plaintiffs' intended speech is proscribed by Rule 8.4(7), and how it thought plaintiffs could offer "a legitimate nondiscriminatory basis" for their speech. JA 62-65. But the inquiry when assessing jurisdiction is not whether the speech is actually proscribed or "*in fact* proscribed" nor whether plaintiffs would ultimately have a valid defense of an enforcement action; it is whether their intended speech is "*arguably* proscribed." *Picard*, 42 F.4th at 98. As *Picard* notes, the Supreme Court confirmed this distinction in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). And this Circuit has long recognized the distinction on its own: when the plaintiff's reading is "reasonable enough that it may legitimately fear that it will face enforcement of the statute," that suffices. *Vermont Right to Life Committee, Inc., v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). Such plaintiffs have standing even though "there may be other, perhaps even better" readings of the statute that do not proscribe their intended speech. *Id.* The reason for this "somewhat relaxed"[1] standard for First Amendment pre-enforcement claims is that "First Amendment freedoms need breathing space to survive." *Greenberg*, 491 F. Supp. 3d at 30 (quoting *In re Primus*, 436 U.S. 412, 432-33 (1978)); *cf. also* Margaret Tarkington, *"Breathing Space to Survive"—the Missing Component of Model Rule 8.4(g)*, 50 HOFSTRA L. REV. 597 (2022).

*Second*, the district court ignored the principle that courts should generally "presume" a credible threat of enforcement "as long as the relevant [law] is recent and

---

[1] *Communidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017); *Nat'l Org for Marriage v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

not moribund." *Picard*, 42 F.4th at 98; *accord Greenberg*, 491 F. Supp. 3d at 22-23 (similar). Instead, the district court errantly focused on the lack of harmful enforcement history under the predecessor commentary of a different rule—Rule 8.4(4)—a rule that is limited to conduct that prejudices the administration of justice. *Contrast* JA 63, *with Pacific Capital Bank v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (holding that plaintiff established standing to challenge a civil penalty provision despite the state's argument that it had never enforced the statute against anyone and that "it is unknown how the [s]tate will apply that section in any future enforcement action."). The "credible threat" standard is a "more permissive" standard for imminence than either "certainly impending," or even "substantial risk." *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013). To demonstrate a credible threat, a plaintiff need not demonstrate that a prosecution is about to occur, but merely that the plaintiff's fear of enforcement "is not imaginary or wholly speculative." *Id.* (internal quotation omitted).

*Third*, the district court thought that Rule 8.4(7)'s undifferentiated truistic carve out for conduct protected by the First Amendment further eliminated any reasonable fear. JA 63, 65. Not so; this type of general exemption for First Amendment protected activity "d[oes] little to narrow the scope of the limitation on speech." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103 n.17 (1981). It offers no "realistic" protection for speakers who still risk "after-the-fact" liability or "at least" risk "be[ing] required to defend" their exercise of First Amendment rights. *Id.* Even individual defendants' recognition of First Amendment implications does not change the "open-ended language" of a rule that deters speakers. *Speech First v. Fenves*, 979 F.3d 319, 337 (5th Cir. 2020). "[T]he First

7

Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige.*" *United States v. Stevens*, 559 U.S. 460, 480 (2010).

For each of these three reasons, the district court should have denied the motion to dismiss for want of jurisdiction. But even if one considers it a close question, the court erred in dismissing the claim out of hand at the 12(b) stage without affording the parties the opportunity for discovery relevant to the jurisdictional questions.

## II. The district court erred by deciding the issue against the plaintiffs before the parties engaged in discovery.

When facing a motion to dismiss for lack of jurisdiction, the plaintiff "bears no evidentiary burden at the pleading stage." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Courts must "draw from the pleadings all reasonable inferences in the plaintiff's favor and are to presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 737 (internal citations, quotations, and alterations omitted). The district court did not do that here. Instead, it faulted the complaint for speaking "only in terms of generalities." JA 62, 64. It refused to consider the possibility that the expression of politically controversial views, or even the articulation of slurs or epithets, could be considered to "manifest bias or prejudice" under the rule's definition of discrimination. It refused to infer that the enforcement authorities would adopt a similar stance to the Rule's vocal supporters. *See* JA 66-68. And it refused the infer that plaintiffs wished to engage in certain offensive speech that they described in their complaint, because they did not make their personal intention clear enough until the motion to dismiss briefing. JA 68 n.1. In other words, the district court took pains to draw inferences *against* the non-moving party.

Had it allowed the plaintiffs to conduct discovery, they may have been able to demonstrate further that their concern about enforcement was "not imaginary or wholly speculative." *Hedges*, 724 F.3d at 196. In *Greenberg*, discovery aided the court's jurisdictional analysis in several respects. 593 F. Supp. 3d at 192, 197, 225. There, the defendants submitted a declaration from the chief counsel in the Pennsylvania Office of Disciplinary Counsel purporting to disavow enforcement of the challenged rule under the circumstances presented by the plaintiff. Declaration of Thomas J. Farrell, No. 20-cv-3822, Dkt. 56 (E.D. Pa. Oct. 1, 2021). But written discovery propounded by plaintiff revealed that the position of that declarant did not bind or purport to speak for any of the other twelve defendants (who as Disciplinary Board members had the authority to replace the declarant from his chief counsel post at any time). Discovery also revealed that the declared position had never been promulgated as guidance for counsel internally in the office or externally for regulated attorneys, that there existed no set process for amending the declarant's position, that there existed no mechanism for licensed attorneys to seek advisory guidance on the rule, and that the office might still engage in investigatory contact before dismissing complaints. *See* Exhibits 1 & 2 to Motion for Summary Judgment, No. 20-cv-3822, Dkt. 65-3, 65-4 (E.D. Pa. Nov. 16, 2021). The declaring defendant also conceded that his disavowal of enforcement at CLE presentations was not unconditional; rather, it would depend on a "reasonable and measured deliberation" about the content of CLE speaker/audience interactions. Ex. 2, Dkt. 65-4 at ¶16.

The defendant's disavowals were not dispositive in *Greenberg*, nor would they be here because this Circuit recognizes "there is nothing that prevents the State from

changing its mind."[2] Nonetheless, the inverse is possible in that the enforcement intentions or lack of any disavowals may bear on the jurisdictional question of whether there is a credible threat of enforcement leading to an objectively reasonable chill on plaintiffs. *See Knife Rights, Inc v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (finding jurisdiction where "Defendants d[id] not disavow" enforcement).

These sorts of discovery revelations demonstrate the error of immediate pre-discovery jurisdictional dismissal. When a plaintiff's proposed speech is not even in the ballpark of the regulatory proscription, that case warrants 12(b)(1) dismissal. But as *Greenberg* and the above real-world examples indicate, the plaintiffs' concern here is far from imaginary. "In resisting a motion to dismiss under Rule 12(b)(1), plaintiffs are permitted to present evidence (by affidavit or otherwise) of the facts on which jurisdiction rests." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (citation omitted). "In addition, courts generally **require** that plaintiffs be given an opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which discovery is sought, are particularly within the knowledge of the opposing party." *Id.* (citation omitted and emphasis added).

The district court erred in presuming, in the absence of any record evidence and before any development of the record, that plaintiffs faced only an "abstract, subjective fear" of enforcement. JA 68.

---

[2] *Vermont Right to Life Committee*, 221 F.3d at 383; *Picard*, 42 F.4th at 99.

## Conclusion

For the foregoing reasons, this Court should reverse the district court's dismissal of the action.

Dated: March 1, 2023     Respectfully submitted,

/s/ *Adam E. Schulman*
Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorney for Amicus
Hamilton Lincoln Law Institute*

# Fed R. App. P. 32(g) Certificate of Compliance

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because:

This brief contains 2,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Garamond font.

Executed on March 1, 2023.

*/s/ Adam E. Schulman*
Adam E. Schulman

**Certificate of Service**

        I hereby certify that on March 1, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

                                              */s/ Adam E. Schulman*
                                              Adam E. Schulman