# 22-3106-cv

---

IN THE

# United States Court of Appeals for the Second Circuit

---

**Mario Cerame and Timothy Moynahan,**

*Plaintiffs-Appellants*,

v.

**MICHAEL P. BOWLER, in his official capacity as Connecticut Statewide Bar Counsel; and MATTHEW G. BERGER, in his official capacity as Chair of the Statewide Grievance Committee,**

*Defendant-Appellees*.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

---

**BRIEF OF DEFENDANTS-APPELLEES**

---

WILLIAM TONG
ATTORNEY GENERAL

Michael K. Skold
Deputy Solicitor General
Emily Gait
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
Ph: 860-808-5020
Fax: 860-808-5334
Email: Michael.skold@ct.gov

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………....…iii

STATEMENT OF THE ISSUES…………………………………………vii

INTRODUCTION………………………………………………………....1

STATEMENT OF THE CASE……………………………………………3

SUMMARY OF ARGUMENT…………………………………………...10

STANDARD OF REVIEW………………………………………………12

ARGUMENT……………………………………………………….…....12

    I.     PLAINTIFFS LACK STANDING………………………………12

    A.    The Rule does not apply to or proscribe constitutionally protected speech, so Plaintiffs have no well-founded fear of discipline if they engage in such speech……………………………………………….……14

    B.    Even if the Rule applied to constitutionally protected speech, Plaintiffs have not alleged any that would constitute "discrimination" or "harassment" under the Rule……………………………………………….……..23

    C.    Plaintiffs' arguments lack merit………………………….27

    II.    THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS……………………………………………………32

    A.    *Ex Parte Young* does not apply because Plaintiffs have not alleged an ongoing violation of federal law, and any federal court effort to preempt hypothetical future violations would intrude on state sovereignty and violate principles of federalism and comity…………………………………….……..33

B.   Defendants are not proper parties under *Ex Parte Young*...38

1.   Judicial decisionmakers like Defendants cannot be sued for *ex ante* relief under *Ex Parte Young*………...39

2.   Defendants have neither the power nor the willingness to enforce the Rule against constitutionally protected speech…………………………………………………………42

C.   *Pennhurst* Bars Plaintiffs' Claims That The Rule Violates The State Constitution………………………………………...44

CONCLUSION………………………………………………………45

CERTIFICATION OF COMPLIANCE …..………………………46

CERTIFICATION OF SERVICE ………………………………47

## TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999)……………………..…………...…33

*Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979)………………….......13

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014)……………….………passim

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)………………….....………36

*Burt v. Titlow*, 571 U.S. 12 (2013)……………………………………36, 41

*California v. Texas*, 141 S. Ct. 2104 (2021)……………………………..21

*Carlone v. Lamont*, No. 21-871, 2021 U.S. App. LEXIS 32440 (2d Cir. Nov. 1, 2021)…..……………………………………………….………31

*Chester v. Willey*, No. 374862, 1991 Conn. Super. LEXIS 1409 (Super. Ct. June 7, 1991)…………………………………………….…6, 41

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)……………......passim

*Cohen v. Statewide Griev. Comm.*, 339 Conn. 503 (2021)…………….4, 14

*CISPES (Committee in Solidarity with People of El Salvador) v. FBI*, 770 F.2d 468 (5th Cir. 1985)…………………………………….16

*Conn. Ass'n of Health Care Facilities v. Rell*, No. 3:10CV136(PCD), 2010

U.S. Dist. LEXIS 54649 (D. Conn. June 2, 2010)……………....…42

*Costabile v. N.Y.C. Health & Hosps. Corp.,* 951 F.3d 77

(2d Cir. 2020)…..……………………………………………26, 27

*DOC v. New York*, 139 S. Ct. 2551 (2019)…………………………….21

*Ex parte Young*, 209 U.S. 123 (1908)……………….…..…………...passim

*FMC v. S.C. State Ports Auth.*, 535 U.S. 743 (2002)………………….....33

*Greenberg v. Goodrich*, 593 F. Supp. 3d 174 (E.D. Pa. 2022)…………..21

*Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020)……...…21, 22

*HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286

(W.D.N.Y. 2010)…..……………………………………………42, 44

*Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261 (1997)..…………………33, 34

*Lawson v. Hill*, 368 F.3d 955 (7th Cir. 2004) ……………………………17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)……………………….....21

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001)…………………………42

*Papasan v. Allain*, 478 U.S. 265 (1986)………………………………34, 35

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89

iv

(1984)……………………………………………………………33, 34, 44

*Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002)……………45

*Schleifer v. City of Charlottesville*, 159 F.3d 843 (4th Cir. 1998)……… 16

*Seminole Tribe v. Florida*, 517 U.S. 44 (1996)…………………..…33, 34

*Sobocinski v. Statewide Grievance Com.*, 215 Conn. 517 (1990)…….6, 41

*Statewide Grievance Comm. v. Presnick*, 215 Conn. 162 (1990)….....6, 41

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)……………....29

*United States v. Johnson*, 875 F.3d 360 (7th Cir. 2017)…………………16

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)….........34

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021)…………passim

## Statutes and Practice Book

Connecticut Practice Book §§ 2-29 *et seq*……………………………….……6

Connecticut Practice Book § 2-32(a)(2)(B)…………………………….6, 7, 43

Connecticut Practice Book § 2-32(g)………………………………………….7

Connecticut Practice Book § 2-32(h)………………………………………….7

Connecticut Practice Book § 2-32(i)(1)……………………………………….7

Connecticut Practice Book § 2-32(i)(2) …………………………………..…7

Connecticut Practice Book § 2-35(a)…………………………………….……7

Connecticut Practice Book § 2-35(c)…………………………………..……7

Connecticut Practice Book § 2-35(i)…………………………….…………7

Connecticut Practice Book § 2-35(k)(1)………………….……….……8, 15

Connecticut Practice Book § 2-38(a)…………………….…..……………8

Connecticut Practice Book § 2-38(f)……………….…….………….……8, 15

Connecticut Practice Book § 2-47……………….….……………..….…..8

50 U.S.C. § 1881a(i)(3)(A)……………….…..……………………….…19

50 U.S.C. § 1881a(b)(6)………………..……..……………………..…18

**Rules**

Rule 8.4(7) of the Rules of Professional Conduct………………….…passim

## STATEMENT OF THE ISSUES

1.      Have Plaintiffs adequately alleged an injury-in-fact for purposes of Article III standing when they have not been threatened with or subjected to discipline under the challenged Rule of Professional Conduct; there is no history of enforcing the Rule to the kind of speech Plaintiffs wish to engage in; and Defendants have repeatedly disavowed both the authority and the intent to enforce because on its face the Rule does not apply to or proscribe constitutionally protected speech?

2.      Defendants are judicial actors who exercise an exclusively judicial function to impartially resolve attorney grievances in accordance with state law and the federal constitution. Does the Eleventh Amendment preclude the federal courts from entertaining this suit to enjoin their exercise of that state judicial function, particularly where no violation of federal law has yet occurred and any hypothetical future violation depends on these and other state judicial decisionmakers disregarding the Rule's limited scope by disciplining attorneys for protected speech the Rule does not touch?

## **INTRODUCTION**

Connecticut's Superior Court judges unanimously adopted Rule 8.4(7) of the Rules of Professional Conduct ("the Rule"), which prohibits discrimination in the legal profession. The Rule unambiguously protects attorneys' First Amendment rights by excluding all constitutionally protected speech from the scope of the Rule. And Connecticut's disciplinary procedures include many procedural safeguards to ensure that substantive protection is implemented in any grievances that improperly target an attorney's protected speech.

Despite those protections, Plaintiffs ask the federal courts to intrude on the Connecticut judiciary's exclusive power to regulate attorneys through this pre-enforcement facial challenge to the Rule. They claim no actual or threatened grievance against them, and rely instead on their own subjective and unfounded fear of discipline if they engage in speech they believe is both constitutionally protected and proscribed by the Rule. But that is impossible: An attorney's actions can be *either* constitutionally protected speech *or* within the scope of the Rule, but not both. Two conclusions flow from that, both of which require affirmance.

1

First, Plaintiffs lack standing. Their claimed injury – fear of enforcement and the "chill" and "self-censorship" it has allegedly caused – is not well-founded given the Rule's substantive protections, procedural safeguards, and the complete lack of any history or intent to enforce the Rule against protected speech. And even if the Rule applied to protected speech, none of Plaintiffs' conclusory allegations establish that their intended speech arguably rises to the level of prohibited "discrimination" or "harassment" as the Rule defines those terms. Plaintiffs cannot manufacture standing based on unreasonable fears of enforcement for hypothetical speech the Rule plainly does not prohibit.

Second, the Court should affirm on the alternative ground that the Eleventh Amendment bars Plaintiffs' claims. The Rule does not proscribe constitutionally protected speech, so its mere existence cannot be an ongoing violation of federal law under *Ex Parte Young*. A violation could only occur if Connecticut judges disregard the Rule's protections and discipline an attorney for protected speech. *Ex Parte Young* – and the principles of federalism and comity it embodies – does not permit federal courts to assume those future violations by state judges or use them to facially invalidate a duly enacted Rule of Professional Conduct.

2

That is especially true given that these Defendants stand in the place of state judges and exercise an exclusively judicial function, and so cannot be sued under *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021).

## STATEMENT OF THE CASE

**A.    The Connecticut Judges reject the ABA's Model Rule and adopt a narrower rule that categorically excludes constitutionally protected speech**

Plaintiffs repeatedly seek to link the Rule to the American Bar Association's Model Rule 8.4(g). Pl. Br. at 5-6, 31-33. But Connecticut's Rule is significantly different, and far more protective of First Amendment rights. Two lawyers initially proposed the Model Rule to the Rules Committee of the Superior Court, which tabled the proposal and instructed the Connecticut Bar Association ("CBA") to investigate and develop a different proposal. *See generally* Compl., ¶¶ 30-39. The CBA ultimately proposed, and the Judges unanimously adopted, a narrower rule that amended Rule 8.4 as follows:

> It is professional misconduct for a lawyer to: . . . (7) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.

The Judges also unanimously adopted new commentary to the Rule that provides far more robust First Amendment protections than the Model Rule. That commentary "explains and illustrates the meaning and purpose of the [r]ule," which "must be read together with its [c]ommentary . . . for it to be fully and properly understood." *Cohen v. Statewide Griev. Comm.*, 339 Conn. 503, 514 (2021). Three aspects of the commentary are relevant here.

First, the commentary defines the term "discrimination" as verbal or physical "conduct" that is "directed at an individual" and "harmful" to that individual. Compl., ¶ 41. Similarly, the term "harassment" commonly is understood to mean conduct directed to a particular person,[1] and the commentary explains that such conduct must be "severe or pervasive" and "derogatory or demeaning" to constitute a violation. *Id.*, ¶ 41. The Rule therefore does not proscribe "offensive," "harsh" or "forceful" speech in the abstract. *Contra id.*, ¶¶ 3, 14-15, 19, 52. It instead addresses the specific vice of physical and verbal "conduct" that is directed at specific individuals and causes them harm.

---

[1]    https://www.collinsdictionary.com/us/dictionary/english/harassment (last visited March 14, 2023).

4

Second, the commentary makes clear that "[n]ot all conduct that involves consideration of" the protected categories will constitute discrimination or harassment, and that conduct implicating those categories also falls outside the Rule if "there [is] a legitimate nondiscriminatory basis for the conduct." *Id.* So engaging in conduct that "affects" one of the protected categories does not, without substantially more, violate the Rule. *Contra id.*, ¶ 51.

Third, and most importantly, the commentary expressly provides that "[a] lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution." *Id.*, ¶ 41. This unambiguous limitation reflects the judges' clear intent that Rule 8.4(7) does not apply to or proscribe constitutionally protected speech, and that grievances should not be filed or discipline imposed based on such speech.

**B.    Connecticut provides many procedural safeguards to ensure the Rule's substantive First Amendment protections are fully and timely implemented**

Regulation and disciplining of Connecticut attorneys is exclusively a judicial function performed by Superior Court judges, who have

5

"inherent authority to regulate attorney conduct and to discipline members of the bar." *Statewide Grievance Comm. v. Presnick*, 215 Conn. 162, 166 (1990). The judges have delegated portions of this power to the Statewide Grievance Committee ("SGC"), which "act[s] as an arm of the court" when exercising its duties.[2] *Presnick*, 215 Conn. at 167; *Sobocinski v. Statewide Grievance Com.*, 215 Conn. 517, 526 (1990). The SGC is therefore "a judicial entity," and proceedings before it are "judicial proceedings." *Chester v. Willey*, No. 374862, 1991 Conn. Super. LEXIS 1409, at *5-6 (June 7, 1991).

The judges have adopted a comprehensive process for resolving complaints of attorney misconduct, including any potential grievances based on Rule 8.4(7). *See* Conn. Prac. Bk. §§ 2-29 *et seq*. Like the Rule itself, that process is packed with substantive and procedural safeguards to fully protect attorneys' First Amendment rights.

When Defendants receive a grievance complaint under Rule 8.4(7), they conduct a threshold review and can dismiss the complaint if it fails to state a claim. *Id.*, § 2-32(a)(2)(B). So if a Rule 8.4(7) grievance is

---

[2]     Defendant Bowler is the former (now retired) Statewide Bar Counsel, and Defendant Berger is the SGC Chairman.

based on constitutionally protected speech, Defendants can dismiss it at that threshold review without requiring the attorney to appear or file a response. A complaint dismissed under § 2-32(a)(2)(B) is confidential and has no effect on the attorney's record.

If the complaint does not support threshold dismissal, the Statewide Bar Counsel refers it to a local grievance panel to determine whether there is probable cause to believe the attorney violated the Rule. *Id.*, § 2-32(b), (f). This preliminary investigation is again confidential. *Id.*, § 2-32(g). The attorney then files their initial response to the complaint, which can include an evidentiary hearing and legal argument. *Id.*, § 2-32(h). The grievance panel must again dismiss if it determines the complaint is based on protected speech. *Id.*, § 2-32(i)(2).

If the grievance panel finds probable cause it forwards the complaint to the SGC, which typically assigns it to a reviewing committee. *Id.*, §§ 2-32(i)(1) and 2-35(a). The reviewing committee must then hold a hearing where attorneys have the right to counsel and to present evidence, examine witnesses, and present legal argument. *Id.*, §§ 2-35(c) and 2-35(h). The reviewing committee also must dismiss if the evidence shows the complaint targets protected speech. *Id.*, § 2-35(i).

7

If the reviewing committee finds a violation within the Rule's scope the attorney can appeal to the full SGC, where any sanctions are stayed. *Id.*, §§ 2-35(i) and (k) and 2-36. On review the SGC must determine not only whether the attorney violated the Rule – including whether the conduct was exempted protected speech – but also whether the reviewing committee's findings and conclusions are "in violation of constitutional . . . provisions . . . ." *Id.*, § 2-35(k)(1). In other words, both the Rule *and* the grievance procedures require the SGC to identify and protect First Amendment interests before approving discipline.

If attorneys lose at all those levels they have additional recourse through the state courts, which hear presentments and appeals from SGC decisions. *Id.*, §§ 2-38(a) and 2-47. All sanctions are again stayed during a court appeal. *Id.*, § 2-38(b). The attorney can submit another brief and obtain argument. *Id.*, § 2-38(d) and (e). Like the full SGC before it, the Superior Court has an obligation – under Rule 8.4(7), Practice Book § 2-38(f), and the state and federal constitutions – to dismiss grievances based on protected speech. Attorneys can seek further review by the Connecticut Appellate and Supreme Courts and, if necessary, the United States Supreme Court. *Id.*, § 2-38(f).

8

Ultimately, then, the Rule does not apply to protected speech. And before discipline can be imposed attorneys have eight opportunities to persuade eight different judicial decision makers that their alleged actions are protected speech to which the Rule does not apply.

## C.    Proceedings below

Before the Rule had gone into effect or been applied to anyone, Plaintiffs brought this pre-enforcement challenge asking the federal courts to declare the Rule facially unconstitutional because it allegedly violates their state and federal rights to free speech. *See* Compl., ¶¶ 72-90. Defendants moved to dismiss on standing and Eleventh Amendment grounds, and the district court dismissed for lack of standing without reaching the Eleventh Amendment. It explicitly adopted the "somewhat relaxed" standing standard Plaintiffs espouse, JA 58, 60,[3] but held that Plaintiffs have no well-founded fear of enforcement even under that lenient standard because the Rule does not prohibit the abstract and hypothetical speech Plaintiffs allege. JA 62-68. This appeal followed.

---

[3] Citations to the Joint Appendix are to the page number listed in the bottom right corner of the document, not the ECF page number at the top.

## SUMMARY OF ARGUMENT

This Court should affirm the judgment for lack standing and on the alternative ground that the Eleventh Amendment bars Plaintiffs' claims.

First, Plaintiffs' purported fear of enforcement is wholly unfounded and insufficient to support Article III standing. To bring this facial pre-enforcement action Plaintiffs must show, at a minimum, that their fear of future enforcement – and the subjective "chill" and "self-censorship" it has allegedly caused – is "well-founded" based on what the Rule actually proscribes and how it has been enforced. They cannot make that showing. On its face the Rule does not apply to constitutionally protected speech, and Plaintiffs cannot identify a single instance in which either the Rule or its precursor – which Plaintiffs concede had "long" prohibited discriminatory conduct through spoken words – has ever been applied to such speech. Pl. Br. at 19. And given the clear textual limitations of the Rule, Defendants have repeatedly disavowed both the authority and intent to enforce it against protected speech. Plaintiffs' fears are unfounded on that basis alone.

Even if the Rule applied to protected speech, however, Plaintiffs' claimed fears still would be unfounded because they have not alleged any intended speech that arguably falls within the scope of the terms "discrimination" and "harassment," as the Rule defines them. They instead make nothing more than conclusory allegations that either fall outside the scope of those terms, or are far too abstract to support any inference that Plaintiffs' fear of enforcement is well-founded.

Second, the Eleventh Amendment bars Plaintiffs' claims. The Rule does not apply to constitutionally protected speech, so its mere existence cannot be an ongoing violation of federal law necessary to invoke *Ex Parte Young*. That violation could occur only if state court judges disregard both the Rule and the state and federal constitutions and discipline an attorney for protected speech. That has never occurred and likely never will. It would be an affront to the principles of state sovereignty and federalism embedded in the Eleventh Amendment if the federal courts were to assume such actions by the Connecticut judiciary and then use them to facially invalidate a duly enacted Rule of Professional Conduct that has not been threatened or applied to the kind of speech Plaintiffs identify.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal *de novo*. *Futia v. Westchester Cty. Bd. of Legislators*, 852 F. App'x 30, 31 (2d Cir. 2021).

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING

Standing requires a plaintiff to allege an injury that is "concrete, particularized, and actual or imminent"; "fairly traceable to the challenged action"; and "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks omitted). The first of these requirements is not met here.

As Plaintiffs concede, Article III "requires a plaintiff to demonstrate that 'he has sustained or is immediately in danger of sustaining some direct injury' as a result of the defendant's conduct." Pl. Br. at 25, quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs do not allege they have been subjected to an enforcement action or discipline under the Rule; that an enforcement action is imminent; or that anyone has even threatened a grievance based on their intended speech. Nor could Plaintiffs have made such allegations since the Rule was not even operative when they filed suit.

12

The sole injury Plaintiffs claim is instead the subjective "chill" and "self-censorship" they allegedly have imposed out of fear they will be disciplined under the Rule if they speak. Pl. Br. at 25-33. But "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," and Plaintiffs cannot "manufacture standing" through self-imposed injuries based on unreasonable fears. *Amnesty Int'l*, 568 U.S. at 416; *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Plaintiffs' fears of enforcement must instead be "well-founded" based on what the Rule actually proscribes and how it has been enforced. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). If they are not, any subjective chill or self-censorship cannot support standing because it is traceable to Plaintiffs' own actions, not the Rule. *Amnesty Int'l*, 568 U.S. at 416; *see Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) ("imaginary or speculative[ fears] are not to be accepted").

Plaintiffs have no well-founded fear of future enforcement because the Rule does not apply to protected speech, and even if it did Plaintiffs have not alleged any speech they wish to engage in that could constitute "discrimination" or "harassment" as the Rule defines those terms.

13

**A.    The Rule does not apply to or proscribe constitutionally protected speech, so Plaintiffs have no well-founded fear of discipline if they engage in such speech**

Plaintiffs say they are afraid their constitutionally protected speech will subject them to discipline under the Rule. But their subjective fears of future enforcement are neither reasonable nor well-founded because the Rule simply does not apply to protected speech.

First, the Rule's commentary explicitly provides that a lawyer "*does not violate* paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution." Compl., ¶ 41 (emphasis added). This commentary – which the Connecticut judges unanimously adopted – "must be read together" with the Rule "in order for it to be fully and properly understood." *Cohen*, 339 Conn. at 514 (2021). And it unambiguously shows that the Rule does not proscribe protected speech. Plaintiffs' subjective fears of discipline for engaging in such speech are unfounded on that basis alone.

Second, the grievance procedures reinforce and guarantee the Rule's substantive protections at every turn, and make Plaintiffs' fears of discipline even more unreasonable. They provide no less than eight

14

opportunities – in eight different forums before eight different judicial

decisionmakers – for attorneys to show the challenged conduct is

protected speech that falls outside the Rule's scope. *See supra* at 5-9.

Like the Rule itself, the grievance procedures also provide their own

substantive protections against discipline that would violate an

attorney's free speech rights. Conn. Prac. Bk. §§ 2-35(k)(1) and 2-38(f).

Contrary to Plaintiffs' dismissive assertions, these protections are

not "boilerplate" or "meaningless." *Contra* Pl. Br. at 46; Compl., ¶ 57.

The commentary is an explicit rule of construction about how the Rule

should be interpreted and applied, and the grievance procedures require

the SGC and the state courts to conduct a constitutional review in every

case and promptly dismiss grievances that target protected speech.

Both protections "ma[ke] it clear that prosecutions under the [Rule]

should not be brought against 'any expressive conduct . . . protected

from legal prohibition by the First Amendment to the Constitution.'"

*Blum v. Holder*, 744 F.3d 790, 801 (1st Cir. 2014). And they are "a

valuable indication of [the Judges'] concern for the preservation of First

Amendment rights in the specific context of the [Rule]," and "serve[] to

validate a construction of the [Rule] which avoids its application to

protected expression." *Committee in Solidarity with People of El Salvador* v. *FBI*, 770 F.2d 468, 474 (5th Cir. 1985); *see United States v. Johnson*, 875 F.3d 360, 367-68 (7th Cir. 2017); *United States v. Dillard*, 795 F.3d 1191, 1198 (10th Cir. 2015); *Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998).

Third, if these safeguards somehow are not enough to allay Plaintiffs' fears, the complete lack of enforcement against protected speech is, especially given that Defendants' have repeatedly disavowed both the authority and the intent to enforce against protected speech.

To start, Plaintiffs do not allege that a Rule 8.4(7) complaint has ever been filed – or even threatened – based on their or other attorneys' protected speech. That includes during the fourteen months since the Rule became operative, as Plaintiffs' brief identifies several unpled examples of people being sanctioned in other states under different rules, but identifies none in Connecticut. *See* Pl. Br. at 33-37. It also includes the many years when the Rule's precursor – Rule 8.4(4) – was operative, as Plaintiffs concede the pre-2022 version of the rules "long defined professional misconduct as . . . acting in a discriminatory manner . . . through his or her words . . . ." Pl. Br. at 19. Indeed,

Plaintiffs claim on appeal that "in any given year" they have historically made "hundreds of the forceful statements" they fear will subject them to discipline, and yet they have never been disciplined or threatened with discipline for doing so – even under the old rule. Pl. Br. at 46. This complete "lack of a history of enforcement of the challenged statute to like facts," particularly when "no enforcement has been threatened as to plaintiffs' proposed activities," undermines the reasonableness of Plaintiffs' fears and carries "[c]onsiderable weight" in the standing analysis. *Blum*, 744 F.3d at 798.

That lack of enforcement is compounded and carries more weight when, as here, "the Government [has] disavow[ed] any intention to prosecute on the basis of the Government's own interpretation of the statute" and its conclusion that the intended conduct is not prohibited. *Id.* That governmental disavowal further "alleviate[s any] concern" of discipline. *Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004). Throughout this litigation Defendants have repeatedly disavowed both the authority and the intent to enforce the Rule against constitutionally protected speech. ECF 14-1 at 21, 27-34; ECF 22 at 1, 3-4, 8-9. That is not the kind of "just trust us" disavowal that carries little weight. To

17

the contrary, it is an "even more potent" disavowal because it is grounded in the text of the Rule and its commentary, which categorically preclude Defendants from enforcing against protected speech. *Blum*, 744 F.3d at 798 (disavowals carry extra weight "when the challenged statute contains . . . explicit rules of construction protecting First Amendment rights, which in themselves would inhibit prosecution of First Amendment activities").

Simply put, Plaintiffs cannot credibly claim a well-founded fear of enforcement when the Rule does not proscribe their intended speech; has never been threatened or applied to such speech, by anyone; the grievance procedures demand immediate dismissal of complaints that improperly target such speech; and Defendants have disavowed both the authority and the intent to enforce based on such speech.

*Amnesty Int'l* and *Blum* are instructive. In *Amnesty Int'l*, the plaintiffs brought a pre-enforcement First and Fourth Amendment challenge to a federal statute that allowed the government to surveil individuals outside of the United States. The statute expressly required any surveillance to comply with the Fourth Amendment. 50 U.S.C. § 1881a(b)(6). And before any surveillance could occur, the Foreign

18

Intelligence Surveillance Court ("FISC") had to affirmatively determine that the requested surveillance would not violate the Fourth Amendment. *Amnesty Int'l*, 568 U.S. at 406, citing 50 U.S.C. § 1881a(i)(3)(A).

The Supreme Court held that the plaintiffs lacked standing because their fear of future surveillance was too speculative and depended on a "highly attenuated chain of possibilities," including the possibility that the FISC would authorize surveillance despite the "many safeguards" in the statute. *Id.* at 410. Indeed, the FISC's constitutional gatekeeping function was a "critical[]" factor in the standing analysis, as federal courts should not "endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id.* at 413-14; *see also id.* at 406 n.3 (chastising the dissent for minimizing the statute's safeguards).

The First Circuit reached a similar conclusion in *Blum,* which involved a statutory directive that "[n]othing in this section shall be construed (1) to prohibit any expressive conduct . . . protected from legal prohibition by the First Amendment to the Constitution . . . ." *Blum*, 744 F.3d at 795. Applying *Amnesty Int'l*, the First Circuit held that the

plaintiff lacked standing because fear of future enforcement is "unreasonable" when the statute "contains . . . explicit rules of construction protecting First Amendment rights, which in themselves would inhibit prosecution of First Amendment activities." *Id.* at 798, 801-02. In so holding the Court squarely rejected the same argument Plaintiffs make here; that "rules of construction cannot save an otherwise unlawful statute and so are irrelevant." *Id.* at 801; *see* Pl. Br. at 46; Compl., ¶ 57. For purposes of standing the focus is on legislative intent and the likelihood of a future enforcement action that conflicts with it. *Blum*, 744 F.3d at 801. The plaintiff lacked standing because there was "no reason" to think the government would "ignore these plain expressions of limiting intent" when applying the statute, and any subjective fear to the contrary was "unreasonable." *Id.* at 801-02.

Here, too, the Rule's commentary expressly exempts First Amendment protected speech, and the grievance procedures require the SGC and the state courts to determine that an attorney's actions are not protected speech before imposing discipline. These "safeguards" and gatekeeping functions are "critical" to the standing analysis and make Plaintiffs' fear unreasonable. *Amnesty Int'l*, 568 U.S. at 413-14.

So too does the long string of hypothetical events that would have to occur for Plaintiffs to be disciplined. That includes eight different state judicial decisionmakers ignoring the Rule's protections and disciplining an attorney for protected speech the Rule plainly does not prohibit. Federal courts are supposed to avoid precisely this kind of "guesswork as to how independent decisionmakers will exercise their judgment," and standing theories based on such guesswork are "substantially more difficult" to prove because litigants must show, "at the least," that the third parties not before the Court will "likely" and "predictably" take the feared action. *Amnesty Int'l*, 568 U.S. at 413; *California v. Texas*, 141 S. Ct. 2104, 2117 (2021), quoting *Lujan*, 504 U. S. at 562, *Department of Commerce* v. *New York*, 139 S. Ct. 2551, 2566 (2019). Plaintiffs have not even arguably made that showing here.

The out-of-Circuit district court decisions in *Greenberg v. Goodrich*, 593 F. Supp. 3d 174 (E.D. Pa. 2022) and *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020) do not suggest a different conclusion, as they involved a different and far less protective rule. *See* Pl. Br. at 38; Compl., ¶ 66. Unlike here, Pennsylvania's rule does not exclude protected First Amendment speech, and there was no

21

suggestion that Pennsylvania's disciplinary process contains the same kind or number of procedural safeguards as Connecticut. The Pennsylvania rule also was far broader than Connecticut's Rule, applying not just to discriminatory "conduct" but to all "words" that "manifest bias or prejudice." *Greenberg I*, 491 F. Supp. 3d. at 23-25. And the *Greenberg* plaintiff alleged "specific examples" of the rule being enforced against protected speech. *Id.* at 23, 24. Given that enforcement history and the lack of constitutional safeguards, the defendants could not avoid standing by simply "ask[ing] Plaintiff to trust them not to regulate and discipline his offensive speech even though they have given themselves the authority to do so." *Id.* at 24.

That is nothing like this case. Plaintiffs have neither alleged they wish to engage in conduct the Rule proscribes nor given "specific examples" of enforcement against protected speech. More importantly, Defendants do not ask Plaintiffs to just "trust them" not to enforce. *Id.* at 24. To the contrary, the plain text of the Rule and its commentary categorically deprives Defendants of that authority, whether they want it or not.

**B.**  **Even if the Rule applied to constitutionally protected speech, Plaintiffs have not alleged any that would constitute "discrimination" or "harassment" under the Rule**

Plaintiffs' subjective fears of future enforcement are doubly unfounded because, even if the Rule applied to protected speech, Plaintiffs have not alleged a desire to speak in a way that might rise to the level of harassment or discrimination under the Rule.

As explained above, the Rule only prohibits "discrimination" or "harassment." The commentary defines those terms of art as verbal or physical "conduct" that is "directed at an individual," is "severe or pervasive" and "derogatory or demeaning," and "harmful" to that individual. Further, the terms do not prohibit verbal conduct simply because it "involves consideration of" one of the protected classes, and they do not apply when "there [is] a legitimate nondiscriminatory basis for the conduct." *See supra* at 4-5; Compl., ¶ 41.

Given these clear textual limitations, none of Plaintiffs allegations arguably fall within the scope of the Rule's prohibitions. The sole allegations related to these Plaintiffs' own past and future speech are conclusory and abstract assertions that they:

23

- Sometimes are "highly critical" and "criticize" viewpoints they do not agree with, Compl., ¶¶ 3, 15;

- Sometimes use "harsh language" or "forceful terms" when expressing their criticisms, *id.*, ¶¶ 14, 19, 52;

- Have opposed the Waterbury Board of Education's decision to teach critical race theory, *id.*, ¶¶ 18-19; and

- Have made speeches that "address issues affecting several of the 15 groups protected by Rule 8.4(7)." *Id.*, ¶ 51.

These epitomize conclusory allegations that cannot survive a motion to dismiss.

First, Moynahan's alleged desire to oppose the use of critical race theory in the Waterbury schools has nothing to do with the Rule, which is limited to discrimination related to the practice of law. *Id.*, ¶¶ 41, 51.

Second, the Rule does not prohibit "criticizing" other viewpoints or using "harsh" or "forceful" language in the abstract. *Id.*, ¶¶ 3, 14-15, 19, 52. Nor does it prohibit conduct merely because it "affect[s]" the protected categories. *Id.*, ¶ 51. No trier of fact could reasonably infer from these abstract and conclusory allegations that Plaintiffs' intended speech will be "directed at an individual" or that it will be so "harmful,"

24

"severe or pervasive" and "derogatory or demeaning" as to arguably fall within the scope of the Rule. And without that predicate inference, the district court could not have concluded that Plaintiffs have a well-founded fear of future enforcement based on the same allegations.

Contrary to Plaintiffs' repeated assertions, this is not an example of a district court failing to draw reasonable inferences in a plaintiff's favor or to consider the "general allegations [that] embrace those specific facts that are necessary to support the claim." *E.g.*, Pl. Br. at 2, 16, 22-24, 30, 49-50. There were no "inferences" to draw or more "specific facts" to embrace because Plaintiffs' conclusory allegations provide no substance or context. They give no indication – even generally – of what Plaintiffs' "harsh" and "forceful" speech might be or what it will be about; when, how or where they intend to make it; how frequently they would make it; whom it would be directed to, if anyone; whether and how it might harm those unidentified persons; or whether any person has ever expressed even the slightest displeasure at the "hundreds of [similar] forceful statements" Plaintiffs have annually made in the past. Pl. Br. at 46.

All of these and other basic facts are necessary to any assessment of whether Plaintiffs' intended speech might arguably fall within the Rule's prohibitions, and by extension, to any determination that Plaintiffs' supposed fear of enforcement based on such speech is well founded. But Plaintiffs pled none of them. So the district court was left not to "infer" anything from properly pled facts, but to take Plaintiffs' abstract and conclusory allegations and simply make up whatever additional "specific facts" Plaintiffs think might show their desired speech arguably falls within the scope of the Rule. Even for a *pro se* litigant, courts can "cannot invent factual allegations that he has not pled." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020). But these Plaintiffs are not *pro se* litigants; they are experienced attorneys represented by experienced counsel. The district court correctly declined to rewrite the complaint for them.

Plaintiffs, then, are left with ¶ 58 of the Complaint, which abstractly identifies several "examples" of the kinds of speech other attorneys not before the Court theoretically might be "reluctant to express" because of the Rule. Compl., ¶ 58; *see* Pl. Br. at 30, 48-50. That paragraph fares no better. Not just because Plaintiffs failed to allege

26

any personal desire to engage in the examples of speech identified in that paragraph – although that certainly was a proper ground to dismiss, *see* JA 67-68 and n.1 – but because it suffers from the same flaws as the rest of Plaintiffs' conclusory allegations. It identified only generic examples of the "sorts of" speech some attorneys might be concerned about; alleged only that attorneys might be "*reluctant* to express" such speech without any allegation that Plaintiffs or any other attorney actually has or will refrain from such speech; and most importantly, once again gave no factual context from which the district court could reasonably infer that the abstract and hypothetical examples might arguably rise to the level of discrimination or harassment if ever carried out. So the district court was again left to simply make up and assume a host of unpled facts to support the inferences Plaintiffs ask the courts to draw. The district court properly declined that invitation. *Costabile*, 951 F.3d at 81.

## C. Plaintiffs' arguments lack merit

The Court should reject Plaintiffs' various arguments to the contrary, all of which lack merit.

First, Plaintiffs improperly attempt to sneak in several pages of First Amendment merits argument that has no place in the standing analysis. Pl. Br. at 18-21. The First Amendment merits are not relevant to this jurisdictional appeal, the district court rightly refrained from discussing them, and this Court should not consider them either. Suffice it to say for now, though, the Rule is not a content- or viewpoint-based regulation of speech because on its face it *does not apply* to protected speech.

Second, Plaintiffs ironically fault the district court for improperly focusing on the "merits under the guise of a ruling on standing." Pl. Br. at 43-45. But the district court rightly declined *Plaintiffs'* improper attempts to inject the First Amendment merits into the standing analysis. If Plaintiffs instead mean the district court considered the merits of whether Plaintiffs' intended speech arguably violates the Rule, *see id.* at 44, then of course it did, and that was entirely appropriate. The whole point of the "somewhat relaxed" pre-enforcement standing standard is to discern whether a plaintiff's subjective fear of future enforcement is "well-founded." That necessarily entails an inquiry into what the Rule prohibits and whether Plaintiff's

"intended future conduct is arguably . . . proscribed by [the] statute they wish to challenge." *Susan B. Anthony List*, 573 U.S. at 162 (quotation marks omitted). The "arguably proscribed" analysis is, by definition, an assessment of the merits of a hypothetical future enforcement action based on the alleged conduct. To be sure, a violation need not be certain to support a well-founded fear, but here an enforcement action based on Plaintiffs' intended speech is not remotely likely – or even possible. So their fear is not well-founded.

Third, Plaintiffs claim the district court improperly required them to provide "evidence" of their injuries on a motion to dismiss. Pl. Br. at 22. It did no such thing. It simply quoted U.S. Supreme Court precedent holding that Plaintiffs must establish standing "with the manner and degree of evidence required at the successive stages of the litigation." JA at 57, 68, quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). It then thoroughly analyzed the inadequacies of Plaintiffs' *allegations* in the complaint, not Plaintiffs' failure to support them with evidence. And although the district court correctly noted that it could consider evidence outside the pleadings on a motion to dismiss, JA at 54, it did not actually do so.

29

Fourth, Plaintiffs complain that the district court refused to accept as true Plaintiffs' allegation that their fear of discipline is "real," but that argument tilts at windmills. Pl. Br. at 2, 29. Plaintiffs concede that their fear of enforcement must be both "actual" (i.e., "real and imminent") *and* "well-founded." Pl. Br. at 3, 15-16, 26. To the extent the "real" and "well-founded" requirements are different and the district court conflated them, it also held that Plaintiffs' fears are not "well-founded" for the same reasons it did not consider them to be "real." JA at 63, 65. Even if the district court had not drawn that distinction, moreover, Plaintiffs concede that the "well-founded" issue remains and is dispositive. Their purported fear is not well-founded for the reasons discussed herein, so any focus by the district court on whether Plaintiffs' fears also are "real" is beside the point.

Fifth, Plaintiffs devote three pages to comments by two private lawyers who initially proposed the ABA Model Rule to the Rules Committee, which comments Plaintiffs claim support their fears. Pl. Br. at 31-33. But those alleged comments are irrelevant because the individuals who made them do not interpret or enforce the Rule and have no say over whether a Rule 8.4(7) grievance can proceed – or

30

discipline be imposed – when it is based on protected speech. More importantly, the judges *rejected* the ABA Model Rule those attorneys proposed and instead adopted Rule 8.4(7) and its commentary, which is far narrower and explicitly excludes constitutionally protected speech. Plaintiffs cannot base their subjective fear of enforcement on testimony by attorneys who have no enforcement authority, about a proposed rule the judges did not adopt.

Sixth, Plaintiffs devote even more space – five full pages – to unpled examples of individuals being sanctioned in other states under entirely different rules and regulations. Pl. Br. at 33-37. Even assuming the Court could consider these unpled allegations – which it cannot, *Carlone v. Lamont*, No. 21-871, 2021 U.S. App. LEXIS 32440, at *9 (2d Cir. Nov. 1, 2021) – they too are irrelevant. Plaintiffs never show what rules those individuals were disciplined under; whether the rules defined "discrimination" and "harassment" in the same limited way the Rule does (if at all); or whether the rules included the same robust First Amendment protections and procedural safeguards as Connecticut's Rule. These unpled allegations have no bearing on whether these Plaintiffs have a well-founded fear of discipline under this Rule.

31

Finally, Plaintiffs claim their fears are somehow amplified by purported ambiguities in the Rule. Pl. Br. at 39-41. But there is nothing ambiguous about the commentary's categorical exclusion of all protected speech. Nor can Plaintiffs manufacture standing by making only conclusory allegations and then asking the courts to speculate about potential ambiguities as-applied to subordinate unpled facts that Plaintiffs deliberately left out. Again, if Plaintiffs want to rely on the vagueness rule they espouse for standing purposes, they must plead facts to show the Rule is somehow vague as-applied to their own speech. Otherwise there is no basis to conclude that any purported vagueness in the Rule has somehow harmed them or amplified their alleged fears.

## II. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS

The Connecticut judges explicitly exempted constitutionally protected speech from the Rule's scope. The only relevant question, then, is which courts should be tasked with protecting any First Amendment interests in hypothetical future grievances: State courts, which must identify those interests in concrete cases and dismiss grievances that improperly target protected speech? Or federal courts exercising jurisdiction over a pre-enforcement challenge in which they

are asked to facially invalidate a duly enacted state rule based on hypothetical speech the Rule does not touch? The Eleventh Amendment and basic principles of federalism require that the state courts have that responsibility, which they are fully willing and capable to perform.

**A.** **Ex Parte Young does not apply because Plaintiffs have not alleged an ongoing violation of federal law, and any federal court effort to preempt hypothetical future violations would intrude on state sovereignty and violate principles of federalism and comity**

The states retained their status as independent sovereigns when they entered the Union. *Alden v. Maine*, 527 U.S. 706, 714 (1999). The Eleventh Amendment accords states the "dignity" and "respect" that comes with that sovereign status by providing them with a "broad" and "inviolable" immunity from suit in federal court. *Fed. Mar. Comm'n v. S. Carolina Ports Auth.*, 535 U.S. 743, 751, 760, 765 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997) (majority opinion); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). That immunity has its basis in principles of federalism and comity, and is premised on the indignity that would result if one sovereign could be made to appear against its will in the courts of another. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).

The Eleventh Amendment's extensive protections can be overcome under *Ex Parte Young* when the suit seeks prospective relief against state officials for ongoing violations of federal law. But the Supreme Court has reiterated time and again that *Ex Parte Young* is a "narrow exception" to the "broader" principle of sovereign immunity, and must be "narrowly construed" so that the Eleventh Amendment is not reduced to an "empty formalism." *Whole Woman's Health*, 142 S. Ct. at 532; *Pennhurst*, 465 U.S. at 98, 102, 114 n.25; *Seminole Tribe*, 517 U.S. at 76; *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256 (2011), quoting *Coeur d'Alene*, 521 U.S. at 270. So "[a]pplication of the *Young* exception must reflect a proper understanding of its role in our federal system . . . ." *Coeur d'Alene*, 521 U.S. at 270 (majority opinion). That role is to allow federal courts to issue relief that is "tailored to conform as precisely as possible to those specific situations in which it is necessary" for the vindication of federal law. *Papasan*, 478 U.S. at 277 (quotation marks omitted).

This case is a paradigmatic example of when *Ex Parte Young* should not apply, for three reasons.

First, federal court intervention is not "necessary" to vindicate an "ongoing" violation of federal law, and it certainly is not necessary at this time. *Papasan*, 478 U.S. at 277. To the contrary, Plaintiffs have not and cannot allege an existing or ongoing violation of federal law because the Rule simply does not apply to or proscribe constitutionally protected speech. The Rule's mere existence therefore cannot be the basis for invoking *Ex Parte Young*. The only way an actual and ongoing violation theoretically could occur is if state judges and disciplinary authorities abdicate their obligations under the Rule by disciplining an attorney for protected speech outside the Rule's scope. That has never occurred and likely never will. Unless and until it does, federal court intervention is not "necessary" to vindicate an "ongoing" violation of federal law.

Second, Plaintiffs do not seek relief "tailored to conform as precisely as possible to those specific situations" in which the federal courts' intervention theoretically might be necessary. *Papasan*, 478 U.S. at 277. They instead asked the district court to use the blunt instrument of a pre-enforcement facial challenge to permanently invalidate the Rule in all its applications, including those that plainly would not violate the First Amendment. They asked the district court to

35

do so based not on any "specific situations" before it, but on abstract hypotheticals that fail to define the precise nature of the conduct at issue or the contours of any First Amendment interests it might present. Pre-enforcement facial relief is "strong medicine" that should be employed by a federal court only "sparingly" and "as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). That last resort surely is not at hand when no constitutional violation has yet occurred, likely never will, and state courts exercising jurisdiction over disciplinary matters are perfectly situated to ensure it never does. *See Whole Woman's Health*, 142 S. Ct. at 534, 537 (merely being "chilled by the abstract possibility of an enforcement action" does not suffice to maintain a suit consistent with *Ex Parte Young*) (quotation marks and alterations omitted).

Third, even if Plaintiffs' request was tailored and concrete, federal court intervention here would intrude on state sovereignty in a way *Ex Parte Young* does not permit.  It is a "foundational principle of our federal system" that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). They are "presumptively competent" to adjudicate federal claims,

36

including "claimed violations of constitutional . . . rights." *Id*. This is a "solemn responsibility" that the state courts share "equally with the federal courts," and the Supreme Court consistently "has refused to sanction any decision that would reflec[t] negatively upon [a] state court's ability to" perform that judicial function. *Id.*, (quotation marks omitted).

This principle alone is dispositive. As discussed throughout this brief, both the Rule and the grievance procedures preclude discipline based on protected speech and require the SGC and the state courts to identify, assess and protect any First Amendment interests before discipline can be imposed. Federal courts must assume that state judges can and will perform this judicial function carefully and competently, and that they will protect the very same First Amendment interests Plaintiffs ask this Court to address prophylactically. If the federal court were to reach out and usurp that state judicial function – especially in the abstract and hypothetical circumstances this pre-enforcement facial challenge presents – it would be a remarkable affront to the sovereignty, dignity and respect to which both the State and its judges are entitled under the Eleventh Amendment.

37

That is true even though Plaintiffs could always raise a First Amendment defense in a disciplinary proceeding, whether the commentary says so or not. Pl. Br. at 46; Compl., ¶ 57. Indeed, that is precisely the point. There is no "unqualified right to pre-enforcement review of constitutional claims in federal court," and those seeking to challenge the constitutionality of state laws are "not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health*, 142 S. Ct. at 537-38. So it is entirely appropriate to require litigants to raise their constitutional rights "as defenses to state-law claims" in state court. *Id.* at 538. And when permitting pre-enforcement injunctive relief in federal court would violate the Eleventh Amendment, as it would here, it is not only appropriate but constitutionally required. *Id.*

## B. Defendants are not proper parties under *Ex Parte Young*

*Ex Parte Young* also does not apply because Defendants are judicial decisionmakers who cannot be sued under *Whole Woman's Health*, and because they have neither the authority nor the willingness to enforce the Rule to constitutionally protected speech.

### 1. Judicial decisionmakers like Defendants cannot be sued for *ex ante* relief under *Ex Parte Young*

The SGC is an arm of the Superior Court. Its members and staff stand in the place of judges and perform an exclusively judicial function to resolve attorney grievances. They cannot be sued under *Ex Parte Young* to enjoin their future exercise of that state judicial power.

*Ex Parte Young* permits suit in federal court to "prevent[] state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 142 S. Ct. at 532. It does not permit federal courts to issue "an injunction against a state court" or its "machinery," as to do so "would be a violation of the whole scheme of our Government." *Id*. The distinction lies in the nature of the function each branch performs and their relationship to litigants before them.

Specifically, executive agencies bring enforcement actions against private individuals and stand in an adversarial position when they do. *Id*. They also operate under enabling legislation that typically does not permit – much less require – case-by-case assessments of whether constitutional interests might be impacted if the statute is enforced. The agency's task is to simply apply state law as the statute commands. It may be appropriate for federal courts to intervene in such

circumstances because doing so vindicates the supremacy of federal law without upsetting the principles the Eleventh Amendment embodies. *Virginia Office for Prot. & Advocacy*, 563 U.S. at 256.

State courts and their "machinery" stand in an entirely different posture. They are not "adverse" to the parties before them and "do not enforce state laws as executive officials might." *Whole Woman's Health*, 142 S. Ct. at 532. They instead "work to resolve disputes between parties" and "resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions." *Id.* at 532-33. If state courts err in those efforts, the proper remedy is "some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases" under *Ex Parte Young*. *Id.*

After *Whole Woman's Health*, then, Plaintiffs cannot seriously dispute that Connecticut judges themselves cannot be sued under *Ex Parte Young* to enjoin them from hearing or resolving complaints under Rule 8.4(7). There is no plausible reason why Defendants somehow could be sued for directly performing that same judicial function, especially when the clerk in *Whole Woman's Health* could not be sued for merely assisting the judges in their judicial duties. *Id.* at 532, 533.

40

As explained above, attorney discipline in Connecticut is a quintessential judicial function performed exclusively by the state judiciary. Although the judges have "delegated [part of their] exclusive and original authority" to the SGC and other disciplinary authorities, those officials "act as an arm of the court" and are "judicial entities" who exercise jurisdiction over "judicial proceedings." *Presnick*, 215 Conn. at 167; *Sobocinski*, 215 Conn. at 526; *Chester*, 1991 Conn. Super. LEXIS 1409 at *5-6. Like the judges whose power they exercise, Defendants do not bring or initiate those proceedings and do not stand in an adversarial position toward attorneys. Their sole function is to interpret and apply the Rules of Professional Conduct, impartially resolve grievances, and ensure that any discipline complies with the First Amendment and other constitutional provisions. The federal courts must assume that Defendants and state judges will perform those tasks adequately. *Burt*, 571 U.S. at 19. And if for some reason they do not, Plaintiffs' proper remedy is "some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases" under *Ex Parte Young*. *Whole Woman's Health*, 142 S. Ct. at 532-33.

## 2. Defendants have neither the power nor the willingness to enforce the Rule against constitutionally protected speech

Plaintiffs also cannot be sued under *Ex Parte Young* because they have neither the power nor the willingness to enforce the Rule in the manner Plaintiffs fear.

"To fall within the *Ex Parte Young* exception . . . the defendant state officer must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *HealthNow N.Y., Inc. v. New York,* 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010). To satisfy this requirement, the state officer must have both "a particular duty to enforce the statute in question *and* a demonstrated willingness to exercise that duty" based on the conduct before the court. *Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, No. 10-CV-136, 2010 U.S. Dist. LEXIS 54649, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010) (emphasis added). Put differently, the *Young* "exception only applies when the named defendant state officials have some connection with the enforcement of the act *and* 'threaten and are about to commence proceedings' to enforce the unconstitutional act." *Okpalobi v.*

42

*Foster,* 244 F.3d 405, 416 (5th Cir. 2001) (emphasis added). When that willingness to enforce is not present, it cannot be said that the official is "involved in an ongoing violation of federal law . . . ." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n,* 632 F. Supp. 2d 185, 188 (D. Conn. 2009).

Plaintiffs cannot meet either of those requirements. First, they have not even named the correct defendants with power to impose discipline under the Rule. Although the Statewide Bar Counsel has authority to dismiss grievances on certain grounds, *see* Conn. Prac. Bk. § 2-32(a)(2)(B), he does not have power to decide contested grievances or impose discipline. And although Defendant Berger is the Chairman of the SGC, he is just one voting member of that Committee and does not have unilateral authority to apply the Rule or impose discipline under it. That authority lies with the Committee members collectively, and it is only through them collectively that the Rule can be applied or enjoined.

Second, even if Plaintiffs had named the correct defendants, there is no indication of a threatened enforcement action – imminent or otherwise – based on any protected speech Plaintiffs purportedly wish

to pursue. Nor have Plaintiffs alleged a willingness by Defendants (or any other state actor) to apply the Rule to constitutionally protected speech. To the contrary, through this brief Defendants make clear their belief that the Rule does not cover such speech and that they neither intend nor are willing to apply the Rule to it. Plaintiffs' subjective belief that Defendants nevertheless theoretically *could* do so—no matter how unlikely such an application would be—is precisely the kind of "conjectural injury" that *Ex Parte Young* does not permit. *HealthNow N.Y., Inc.,* 739 F. Supp. 2d at 295.

## C. *Pennhurst* Bars Plaintiffs' Claims That The Rule Violates The State Constitution

Even if Plaintiffs could invoke *Ex Parte Young* for their federal claims, the Eleventh Amendment still bars the purely state law claims in Counts 3 and 4. "[W]hen a plaintiff alleges that a state official has violated state law . . . the entire basis for the doctrine of *Young* . . . disappears" because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984). "On the contrary, it is difficult to think of a greater intrusion on state

44

sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*; *see also Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 541 (2002) (noting that "we cannot read § 1367(a) [the supplemental jurisdiction statute] to authorize district courts to exercise jurisdiction over claims against nonconsenting States").

## **CONCLUSION**

The Court should affirm the judgment, both for lack of standing and on alternative Eleventh Amendment grounds.

Respectfully submitted,

DEFENDANTS-APPELLEES

WILLIAM TONG
ATTORNEY GENERAL

By: */s/ Michael K. Skold*
Michael K. Skold (ct28407)
Deputy Solicitor General
Emily Gait (ct31186)
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
Tel: (860) 808-5020
Email: Michael.skold@ct.gov

45

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 8,741 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.


*/s/ Michael K. Skold*
Michael K. Skold
Deputy Solicitor General

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 30th day of March, 2023, I caused the foregoing brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Michael K. Skold*
Michael K. Skold
Deputy Solicitor General

47