# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2023

(Argued: September 8, 2023     Decided: December 9, 2024)

No. 22-3106

_____

MARIO CERAME and TIMOTHY MOYNAHAN,

*Plaintiffs-Appellants,*

-v.-

CHRISTOPHER L. SLACK, in his official capacity as Connecticut Statewide Bar
Counsel, and MATTHEW G. BERGER, in his official capacity as Chair of the
Statewide Grievance Committee,

*Defendants-Appellees.*[*]

_____

Before:     LIVINGSTON, Chief Judge, WALKER, and SULLIVAN, Circuit Judges.

Plaintiffs-Appellants Mario Cerame and Timothy Moynahan, members of
the Connecticut State Bar, brought challenges based, as relevant here, on the First

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above. The complaint here was originally filed against Michael P. Bowler in his official capacity as Connecticut Statewide Bar Counsel. However, Bowler no longer holds that position. As a result, under Fed. R. App. P. 43(c)(2), the current Statewide Bar Counsel, Christopher L. Slack, is automatically substituted as a party.

Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution, to Connecticut Rule of Professional Conduct 8.4(7) ("Rule 8.4(7)"), which makes it professional misconduct for a lawyer to "[e]ngage in conduct that the lawyer knows or reasonably should know is harassment or discrimination" on the basis of fifteen protected categories "in the practice of law." The district court (Thompson, *J.*) dismissed the complaint, holding that Cerame and Moynahan lack standing to mount a pre-enforcement challenge to Rule 8.4(7). We conclude that Cerame and Moynahan have standing to seek pre-enforcement relief because they have pleaded sufficient facts to plausibly allege that they intend to engage in conduct that is arguably proscribed by Rule 8.4(7) and face a credible threat of enforcement. Accordingly, the judgment of the district court is **VACATED.**

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | RICHARD A. SAMP (Margaret A. Little, *on the brief*), New Civil Liberties Alliance, Washington, DC. |
| FOR DEFENDANTS-APPELLEES: | MICHAEL K. SKOLD, Deputy Solicitor General (Emily Gait, Assistant Attorney General, *on the brief*), *on behalf of* William Tong, Attorney General, State of Connecticut, Hartford, CT. |

DEBRA ANN LIVINGSTON, *Chief Judge*:

Plaintiffs-Appellants Mario Cerame and Timothy Moynahan (together "Appellants") are Connecticut-licensed lawyers and thus subject to the Connecticut Rules of Professional Conduct. They engage in speech related to their law practice that they assert may run afoul of the recently enacted Connecticut

Rule of Professional Conduct 8.4(7) ("Rule 8.4(7)").[1] Cerame and Moynahan sued Defendants-Appellees ("Appellees"), officers of the Connecticut State Bar (the "Bar"), in their official capacities, pursuant to 42 U.S.C. § 1983, asserting First and Fourteenth Amendment challenges to Connecticut's new rule.[2] Appellants contend that Rule 8.4(7) imposes content-based and viewpoint-based restrictions on speech that cannot survive strict scrutiny and that the Rule is unconstitutionally vague.

Cerame and Moynahan appeal from a judgment dismissing their claims. The district court (Thompson, *J*.) determined that Appellants lack standing to assert a pre-enforcement challenge to Rule 8.4(7) because they do not possess a "real and imminent fear" of enforcement. *Cerame v. Bowler*, No. 3:21-cv-1502 (AWT), 2022 WL 3716422, at *8 (D. Conn. Aug. 29, 2022). We disagree. In principal part, the district court failed to credit Appellants' well-pleaded allegations regarding the speech in which they wish to engage and assessed, not whether such

---

[1] To the extent Cerame and Moynahan also allege that they engage in potentially controversial speech unrelated to their law practice, such speech does not arguably fall within Rule 8.4(7), nor do we understand the Appellants to argue that it does. We therefore do not address such speech further.

[2] Appellants also asserted claims based on the Connecticut Constitution but have not addressed the dismissal of those claims on appeal. Accordingly, they have forfeited them. *Phx. Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 372 (2d Cir. 2023) ("Issues not sufficiently argued in the [appellate] briefs are considered [forfeited] and normally will not be addressed on appeal.") (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)).

speech is *arguably* proscribed, but whether it is *in fact* proscribed. This was error. Because Appellants have alleged facts plausibly suggesting that a credible threat of initiation of disciplinary proceedings pursuant to Rule 8.4(7) chills their speech, they have articulated an injury in fact that is sufficiently concrete and imminent to confer Article III standing at the motion to dismiss stage. Accordingly, we vacate the district court's ruling and remand for consideration of whether the Eleventh Amendment bars these claims.

## BACKGROUND

I.      **Factual Background**[3]

A.      **Rule 8.4(7)**

The Connecticut Rules of Professional Conduct were adopted by the judges of the Connecticut Superior Court to regulate the conduct of the State's licensed attorneys. *Cohen v. Statewide Grievance Comm.*, 339 Conn. 503, 513 (2021). Violations of these Rules are subject to sanction, up to and including the loss of one's license to practice law. Connecticut's twenty-one-member State Grievance Committee (the "SGC"), operating pursuant to authority delegated by the judges of the Connecticut Superior Court, both adjudicates grievance complaints and

---

[3] The facts here are taken from the complaint and are accepted as true for the purposes of this appeal. *See Vitagliano v. County of Westchester*, 71 F.4th 130, 133 n.3 (2d Cir. 2023).

supervises the work of Connecticut's Statewide Bar Counsel, who is the official charged, *inter alia*, with the initial review of all grievance complaints filed with the SGC. *See Statewide Grievance Comm. v. Presnick*, 215 Conn. 162, 166–67 (1990).

Any person who believes that a Connecticut-licensed attorney has violated a rule of professional conduct, including Rule 8.4(7), may file a grievance complaint with the Statewide Bar Counsel. Conn. R. Super. Ct. § 2-32(a). If the Statewide Bar Counsel determines that a complaint is deficient on one of ten enumerated grounds—including a failure to allege sufficient facts which, if true, constitute a violation of applicable rules—the Counsel may recommend dismissal of the complaint without requiring a response from the attorney. *Id.* § 2-32(a)(2). Otherwise, the complaint is forwarded to a local grievance panel. *Id.* § 2-32(b). The grievance panel will investigate the complaint, may elect to hold a hearing, and will then make a probable cause determination. *Id.* § 2-32(h), (i). If the panel determines there is probable cause that the attorney is guilty of misconduct, the complaint will be sent to the SGC and become a matter of public record. *Id.* § 2-32(i), (k). The SGC or a designated reviewing committee will hold a hearing in which the respondent may be represented by counsel and may present and cross-examine witnesses. *Id.* § 2-35(c), (h). The SGC will then render a final written

decision that either dismisses the complaint, imposes sanctions, or directs the disciplinary counsel to file a presentment against the respondent in Superior Court for more serious matters. *Id.* § 2-35(i). The respondent may appeal a decision imposing sanctions to the Connecticut Superior Court. *Id.* § 2-38(a).

As in many states, the Connecticut Rules of Professional Conduct are substantially identical to the Model Rules of Professional Conduct of the American Bar Association (the "ABA"). In 2016, the ABA amended its existing Model Rule 8.4 to include a new Rule 8.4(g) that purports to expand the regulation of harassment and discrimination by attorneys.[4] In early 2020, two Connecticut attorneys submitted a proposal to the Rules Committee of the Connecticut Superior Court, urging adoption of ABA Model Rule 8.4(g) as part of the Connecticut Rules of Professional Conduct. The Rules Committee thereafter requested that the Connecticut Bar Association (the "CBA") submit a recommendation regarding the request.

---

[4] Model Rule 8.4(g) reads as follows:

It is professional misconduct for a lawyer to: . . . engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

In September 2020, the CBA's House of Delegates voted to support adoption

of a slightly revised version of Rule 8.4(g), which the CBA thereafter submitted to

the Rules Committee. The Rules Committee solicited and received a great deal of

commentary on the proposed rule, both positive and negative.[5] The Rules

Committee, at its February 2021 meeting, nonetheless voted to submit the proposal

to a public hearing without change. In the aftermath of that hearing, the Rules

Committee recommended adoption of the CBA's proposed new rule to the judges

of the Connecticut Superior Court. In June 2021, those judges adopted the current

Rule 8.4(7) at their annual meeting, without discussion and by voice vote. The rule

became effective on January 1, 2022, making Connecticut one of just a few

jurisdictions that have adopted an anti-discrimination rule with substantively

identical language to the ABA's proposal.

 As adopted, Rule 8.4(7) provides as follows:

> It is professional misconduct for a lawyer to . . . (7) Engage in conduct
> that the lawyer knows or reasonably should know is harassment or
> discrimination on the basis of race, color, ancestry, sex, pregnancy,

---

[5] The Statewide Bar Counsel, for instance, on behalf of the Statewide Grievance Committee, noted in a December 29, 2020 email that while the Committee was taking no formal position opposing the proposal, it "had concerns over the clarity and scope of the rule" and that, in its view, the terms discrimination, harassment, and conduct related to the practice of law, as used in the proposed Rule's text, were "not clearly defined in either the proposal or its commentary." Joint App'x 13, 39, 43. The Committee also observed that the proposal was "constitutionally charged," and it expressed the view that the then-current Rules were being "robustly" applied to limit and deter the conduct that the new Rule would supposedly address. *Id.*

> religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these Rules.

Conn. R. Pro. Conduct 8.4(7). The Commentary to Rule 8.4 defines discrimination to "include[] harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories."[6] *Id.* cmt. Harassment is defined to "include[] severe or pervasive derogatory or demeaning verbal or physical conduct." *Id.*

In addition, while previous Commentary to Rule 8.4 specified that attorneys were subject to discipline for misconduct "in the course of representing a client," Joint App'x 14, the current Commentary to Rule 8.4 broadly defines "conduct related to the practice of law," as used in Rule 8.4(7)'s text, as follows:

> Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or professional activities or events in connection with the practice of law.

---

[6] Connecticut law instructs that the Rules of Professional Conduct and the Commentary "must be read together . . . to be fully and properly understood." *Cohen*, 339 Conn. at 514 (quoting *State v. DeJesus*, 288 Conn. 418, 422 n.16 (2008)). Accordingly, we do so here.

Conn. R. Pro. Conduct 8.4 cmt.  The complaint alleges that "Rule 8.4(7)'s new focus on events unrelated to client representation is a major purpose of the amendment."[7]  Joint App'x 17, Compl. ¶ 49.

Finally, sanctions are not limited to those attorneys who "knowingly" engage in the prohibited verbal or physical conduct but extend to those attorneys who "reasonably should know" that their conduct is prohibited.[8]  Joint App'x 17, Compl. ¶ 47; Conn. R. Pro. Conduct 8.4(7).  The Commentary provides, however, that "[a] lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States Constitution or article first, § 4 of the Connecticut constitution."  Conn. R. Pro. Conduct 8.4 cmt.

### B.     Moynahan and Cerame's Speech

Moynahan and Cerame are lawyers with Connecticut bar licenses who "regularly speak out" on issues, including the free exercise of religion and critical race theory, that implicate several of Rule 8.4(7)'s protected categories.  Joint App'x

---

[7] The allegation references testimony by the CBA's president before the Rules Committee regarding a CBA survey which showed members of Connecticut's bar complaining of allegedly harassing conduct by attorneys at "professional events, *e.g.,* bar association events, CLE, professional networking."  Joint App'x 17–18, Compl. ¶ 49.

[8] A provision previously affirming that "[a] lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists" was also removed from the Commentary.  Joint App'x 14, Compl. ¶ 41.

18, Compl. ¶ 51.  They do so in "legal blogs, articles in legal publications, continuing legal education (CLE) events, legal seminars, press releases, and public speeches."[9]  *Id.*  Both allege that they speak "in forceful terms" on these occasions and that others expressing opposing points of view may, on occasion, construe their remarks "as personally derogatory or demeaning."  Joint App'x 18, Compl. ¶ 52.  Indeed, Cerame and Moynahan allege that statements by supporters of Rule 8.4(7) indicate that these supporters "seek[] to target comments similar to those" that Moynahan and Cerame "routinely make."[10]  Joint App'x 18, Compl. ¶ 53.

Moynahan and Cerame also allege in Paragraph 58 of the complaint that "[t]here are numerous examples of speech" fully protected by the First Amendment that members of the Connecticut bar will be reluctant to engage in, given the fear of a misconduct complaint.  Joint App'x 20, Compl. ¶ 58.  These

---

[9] Moynahan, for instance, has spoken at public forums, including law schools, in support of First Amendment free speech and association rights.  Recently, he has "outspokenly opposed efforts by some educators to adopt curricula based on critical race theory—in particular, teaching students that systemic racism is endemic, that American culture is based on white privilege and supremacy, and that 'diversity' and 'equity' are cultural imperatives."  Joint App'x 9, Compl. ¶ 18.

[10] The complaint references, in particular, testimony by one of the Rule's principal sponsors in support of the bill.  She recounted that after she spoke at a bar-related event in support of racial justice measures, another lawyer there engaged her in a heated conversation in which he called her a "race pandering nitwit" who was "suffering from black entitlement"—conduct, she testified, that "should never be okay."  Joint App'x 18–19, Compl. ¶ 54.  Appellants contend that such speech "is fully protected by the First Amendment," but "arguably actionable under Rule 8.4(7)," giving rise to fear on their part that "they could face a misconduct complaint" for forceful speech on controversial legal issues.  Joint App'x 19, Compl. ¶¶ 55–56.

include using "the pronoun associated with a transgender individual's biological sex when addressing that individual"; using the term "'gender preference' rather than 'gender orientation'"; "[t]elling jokes to other attorneys that the speaker does not intend to be taken seriously but that some members of a protected group deem offensive"; espousing the theories of "sociologist Charles Murray that socioeconomic disparities among racial groups are to a large degree attributable to heritable group differences in cognition and adverse social behaviors, not systemic racial discrimination"; and publishing cartoons that "satiri[ze] or mock[]" "a religious deity" (collectively the "Paragraph 58 examples"). *Id.* Appellants assert that they intend neither "to harass or discriminate against any members of the groups protected by Rule 8.4(7)," but that this lack of intent "provides no protection for their speech." Joint App'x 19, Compl. ¶ 56. Moynihan and Cerame profess that the fear of a misconduct complaint under Rule 8.4(7), and the repercussions thereof, force them "to speak less openly . . . to reduce the likelihood that such a complaint will be filed," *id.*, because they "fear that they may be sanctioned for the sorts of statements they have made in the past," Joint App'x 6–7, Compl. ¶ 5.

## II. Procedural History

In November 2021, Appellants filed suit against Appellees in their official capacities, asserting First and Fourteenth Amendment claims under 42 U.S.C. § 1983 and characterizing Rule 8.4(7) as a content- and viewpoint-based restriction on speech that fails strict scrutiny and is unconstitutionally vague. Appellees moved to dismiss for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity and a lack of standing.

The district court granted the motion to dismiss without providing leave to amend. *See Cerame*, 2022 WL 3716422, at *10. The district court determined that Appellants lack Article III standing because they have not adequately alleged an injury in fact stemming from Rule 8.4(7). *Id.* at *9. Relying on an unpublished District of Connecticut opinion, which in turn relied on a First Circuit case, the district court held that "two types of injuries may confer Article III standing for First Amendment challenges." *Id.* at *6 (internal quotation marks and alterations omitted). The district court characterized these injuries as (1) "when the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution," and (2) "when a plaintiff is chilled from exercising her right

to free expression or forgoes expression in order to avoid enforcement consequences." *Id.* (internal quotation marks and alterations omitted).

Focusing solely on that second type of injury, the district court then held that the complaint "fails to show that Rule 8.4(7) creates a real and imminent fear that [Appellants'] rights are chilled" because it "speaks only in terms of generalities" and "[does not] allege that they have engaged or will engage in the future in any of the speech or conduct described . . . in paragraph 58 of the Complaint." *Id.* at *7–9. As the district court construed the complaint and Rule 8.4(7), none of the speech contemplated by the Appellants "constitutes discrimination or harassment for purposes of Rule 8.4." *Id.* at *7–8. The district court further found that Appellants' fear of sanctions was not "well-founded" because of the lack of history of enforcement of Rule 8.4. *Id.* The argument that Appellants had a real and imminent fear was "also weakened by the language in the Commentary specifically providing that conduct protected under the First Amendment does not violate Rule 8.4(7)." *Id*. at *8. This appeal followed.

## DISCUSSION

We review *de novo* a district court's dismissal of a complaint for lack of standing and construe the complaint in the plaintiff's favor, accepting as true all material factual allegations. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118 (2d

Cir. 2017). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (alterations original)). "At an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (internal quotation marks, citation, and alterations omitted).

Appellants contend that they meet the relaxed requirements for First Amendment standing because they have sufficiently alleged that "they are forced to chill their own speech in order to reduce the likelihood that they will be charged with violating Rule 8.4(7)."[11] Appellants' Br. at 16. The district court determined, to the contrary, that Appellants have not suffered an injury in fact and thus fail on

---

[11] Although standing is required for each claim, because the injury is the same for the First Amendment and Fourteenth Amendment claims in this case—the chilling of protected speech caused by the potential for disciplinary proceedings for violating Rule 8.4(7)—we perform only one analysis. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297–99 (1979) (using one standard to analyze standing for a pre-enforcement challenge invoking the First and Fourteenth Amendments); *Isaacson v. Mayes*, 84 F.4th 1089, 1097–99 (9th Cir. 2023) (applying *Susan B. Anthony List* test to Fourteenth Amendment claims).

the first standing requirement.  But the district court erred by rigidly dividing pre-enforcement First Amendment injuries into two types, an approach that is not followed in the Second Circuit, and then evaluating only whether plaintiffs established a "real and imminent fear of . . . chilling" their free-speech rights. *Cerame*, 2022 WL 3716422, at *7.  The district court also failed to credit Appellants' well-pleaded allegations regarding the speech in which they wish to engage and erroneously assessed not whether such speech is *arguably* proscribed but whether it is *in fact* proscribed.  In addition, the district court placed undue emphasis on both the lack of enforcement history of a new rule and the First Amendment carve-out to Rule 8.4(7).  Appellants have adequately alleged that they suffered an injury in fact, that this alleged injury was caused by Rule 8.4(7), and that the alleged injury is redressable by a ruling in their favor.  Accordingly, Appellants have standing at this stage of the proceedings to proceed with their action.

* * *

An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  An alleged future injury will suffice if the threatened injury is "certainly impending" or there is "substantial risk" of

harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013). We have held that pre-enforcement challenges to regulations providing for civil liability can thus be cognizable under Article III because "plaintiff[s] need not first expose [themselves] to liability before bringing suit to challenge . . . the constitutionality" of such regulations. *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d. Cir. 2023); *see also Vt. Right to Life Comm.*, 221 F.3d at 382 ("The fear of civil penalties can be as inhibiting of speech as can trepidation in the face of threatened criminal prosecution.").

"[W]e assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). In contrast to the approach taken by the district court, we do not begin by dividing pre-enforcement First Amendment injuries into two distinct types, nor does our standing inquiry turn on whether there is "a real and imminent fear of . . . chilling."[12] *Cerame*, 2022 WL 3716422, at *7. Rather, we apply

---

[12] For example, in *Vermont Right to Life Committee*, we discussed a plaintiff's "actual and well-founded fear that the law will be enforced against it" as interrelated with the concerns of a plaintiff engaging in "self-censorship." 221 F.3d at 382 (internal quotation marks omitted). Indeed, without a credible threat of enforcement, any potential chilling effect on a plaintiff's speech will be insufficient to confer standing because "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Therefore, the standing inquiry ultimately boils down to whether there is a credible threat of enforcement against a plaintiff. *See N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) ("The bottom line is that, as long as a credible threat of prosecution exists, a litigant has standing to mount a pre-enforcement challenge to the facial constitutionality of a statute on the basis that her First Amendment

the three-pronged test that the Supreme Court set forth in *Susan B. Anthony List* to assess the existence of a cognizable injury in fact in the context of a pre-enforcement First Amendment challenge. *See Vitagliano*, 71 F.4th at 136 (applying the *Susan B. Anthony List* test). This test requires a plaintiff to demonstrate: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "arguably proscribed by" the challenged regulation; and (3) that "there exists a credible threat of prosecution thereunder" that is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159, 162 (internal quotation marks omitted).

"[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 561). At the pleading stage, as here, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the

---

rights arguably are being trammel[ed]."); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("Both the injury based on threat of prosecution and the injury based on self-censorship depend on the existence of a credible threat that the challenged law will be enforced." (internal quotation marks omitted)).

claim.'" *Lujan*, 504 U.S. at 561. At this stage of the proceedings, Appellants have adequately pleaded each of the necessary elements to establish an injury in fact for the purposes of Article III.

*First*, Appellants' desire to engage in speech on controversial issues in legal blogs and articles, at CLE events, and in press releases, public speeches, and other contexts clearly involves a course of conduct affected with a First Amendment interest. The district court concluded, to the contrary, that the complaint was deficient as to this prong on the theory that it "speaks only in terms of generalities" as to Appellants' speech, does not explicitly allege that they have engaged or will engage in any of the speech specifically described in Paragraph 58, and does not otherwise allege Appellants' intention to engage in speech that is clearly violative of Rule 8.4(7). *Cerame*, 2022 WL 3716422, at *7–9. We disagree.

This case is analogous to *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979), which involved a pre-enforcement challenge to a statute that made it an unfair labor practice to encourage consumers to boycott an agricultural product "by the use of dishonest, untruthful and deceptive publicity." *Id.* at 301. There, the plaintiffs had engaged in consumer publicity campaigns in the past and alleged "an intention to continue" such boycott activities. *Id.* Significantly, the

plaintiffs did *not* allege a "plan to propagate untruths," but argued instead that "erroneous statement is inevitable in free debate," and that fear of enforcement was causing them to "forgo full exercise of" their First Amendment rights. *Id.* The Supreme Court concluded based on these allegations that the plaintiffs' fear of enforcement was not "'imaginary or wholly speculative,'" and that their challenge to the consumer publicity provision "present[ed] a case or controversy within the jurisdiction of the District Court." *Id.* at 302. As the Supreme Court later put it, "[n]othing" in its standing decisions "requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Susan B. Anthony List*, 573 U.S. at 163 (citing *Babbitt*, 442 U.S. at 301).

At the motion to dismiss stage, we draw all reasonable inferences in Appellants' favor. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020); *see also Lujan*, 504 U.S. at 561 (noting that courts assessing standing on a motion to dismiss presume "that general allegations embrace those specific facts that are necessary to support the claim"); *Carter*, 822 F.3d at 56 (same). The complaint alleges, with specific examples, that the Appellants "regularly speak out" on controversial issues, and that they speak "in forceful terms," such that those expressing opposing views may view their remarks "as personally derogatory or

demeaning." Joint App'x 18, Compl. ¶¶ 51, 52. Appellants allege that they "fear that they may be sanctioned for the sorts of statements they have made in the past," Joint App'x 6–7, Compl. ¶ 5, and contend that their "past, present, and future advocacy falls within the ambit of Rule 8.4(7)," Joint App'x 9, ¶ 16. In that context, Paragraph 58 lists additional examples of speech "fully protected by the First Amendment . . . that members of the Connecticut bar" (presumably including Appellants) are "reluctant to express because they reasonably fear that doing so could result in an attorney misconduct complaint." Joint App'x 20, Compl. ¶ 58. The district court is correct that the complaint does not explicitly allege that Cerame and Moynahan wish to engage in the speech described in Paragraph 58. *See Cerame*, 2022 WL 3716422, at *9. But Appellants, Connecticut attorneys who are "concern[ed]" that "they will be subjected to disciplinary proceedings and penalties for engaging in constitutionally protected speech," Joint App'x 21, Compl. ¶ 60, have consistently argued in their briefing here and before the district court that they include themselves among the "members of the Connecticut bar" who will be reluctant to express such views, Appellants' Br. at 30. At this stage, when we draw all reasonable inferences in Appellants' favor and presume "that general allegations embrace those specific facts that are necessary to support a

claim," *Lujan*, 504 U.S. at 561, Appellants' complaint adequately alleges that Cerame and Moynahan would seek, but for Rule 8.4(7), to engage in speech of the sort that Paragraph 58 describes.

To be clear, Appellants do not "intend[] to harass or discriminate against any members of the groups protected by Rule 8.4(7)." Joint App'x 19, Compl. ¶ 56. But this "lack of intent," they allege, "provides no protection for their speech," and they "feel forced to speak less openly" on topics similar to those about which they are already outspoken "to reduce the likelihood that [a misconduct complaint] will be filed." *Id.* This is more than enough at the pleading stage to assert their desire to engage in a course of conduct affected with a constitutional interest.

*Second*, Appellants' contemplated comments are arguably proscribed by Rule 8.4(7). Plaintiffs are not required to show that they will win on the merits of their constitutional claims to establish Article III standing. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 15, 39 (2010) (finding standing sufficient for pre-enforcement review but deciding that plaintiffs lost on the merits of their constitutional claims). At this stage, plaintiffs' "intended conduct need only be *arguably* proscribed by the challenged statute, not necessarily *in fact* proscribed." *Vitagliano*, 71 F.4th at 138 (internal quotation marks omitted). Moreover, "a

plaintiff's interpretation" of a prohibition and its application to him need not be "the best interpretation," only "reasonable enough" for it to convey standing. *Picard*, 42 F.4th at 98; *see also Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024) (defining the arguable proscription standard as whether, "on a *plausible* interpretation of the statute, the conduct is forbidden" (internal quotation marks omitted)). Rule 8.4(7) makes it professional misconduct, *inter alia*, to engage in "harmful verbal . . . conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories." Conn. R. Pro. Conduct 8.4 cmt. While it is indeed *possible* that none of the speech specified in the complaint is actually proscribed by Rule 8.4(7), Appellants' contrary conclusion that such speech could be deemed professional misconduct is both "arguable" and "reasonable." *Picard*, 42 F.4th at 99.

For example, it is certainly arguable that members of the SGC could conclude that referring to transgender individuals by pronouns other than those with which they wish to be addressed is harmful, a manifestation of bias on the basis of gender identity, and directed at individuals so referenced. Indeed, at oral argument, Appellees' counsel were unable to answer definitively whether this example was prohibited under Rule 8.4(7). Oral Arg. at 35:33-37:38. To be clear,

we do not defer to the Appellees' interpretation of the Rule to determine if conduct is arguably proscribed. *See Picard*, 42 F.4th at 99; *Vt. Right to Life Comm.*, 221 F.3d at 383. But the fact that Appellees' counsel was unable to give a considered opinion as to the new Rule's application to the speech referenced in the complaint is illustrative of the reasonableness of Appellants' legitimate fear of discipline in the event that they engaged in such speech in the future.

Appellees argue that the commentary to Rule 8.4, providing that an attorney "does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution," Conn. R. Pro. Conduct 8.4 cmt., "unambiguously shows that the Rule does not proscribe protected speech," Appellees' Br. at 14; *see also* Oral Arg. at 25:15-26:55. Citing to the Fifth Circuit's decision in *CISPES (Committee in Solidarity with People of El Salvador) v. FBI*, 770 F.2d 468 (5th Cir. 1985), Appellees contend that the First Amendment carve-out is "'a valuable indication of [the Judges'] concern for the preservation of First Amendment rights in the specific context of the [Rule],' and 'serves to validate a construction of the [Rule] . . . which avoids its application to protected expression.'" Appellees' Br. at 15–16 (quoting *CISPES*, 770 F.2d at 474). But *CISPES* is inapposite. There, the Fifth Circuit addressed a First Amendment

overbreadth challenge and relied on a similar First Amendment carve-out "to validate a construction of the statute which avoid[ed] its application to protected expression." *CISPES*, 770 F.2d at 474. Because the *CISPES* court was facing an overbreadth challenge, however, its task was actually to construe the statute—to determine what it *in fact* proscribed—"to avoid constitutional infirmities, if such a construction [was] possible." *Id.* at 473-74. But we are neither construing Rule 8.4(7), nor are we engaged in a merits inquiry.

Both the Supreme Court and this Court have made clear that in the type of pre-enforcement challenge presented here, the question is whether the contemplated conduct is "'*arguably* proscribed' by the challenged [provision], not whether the intended conduct is *in fact* proscribed." *Picard*, 42 F.4th at 98. Thus, we held that the speech at issue in *Picard* was arguably proscribed even though New York State had affirmatively disclaimed the statutory interpretation relied upon by the plaintiff and we assumed *arguendo* that the State's interpretation of the statute was "more persuasive." *Picard*, 42 F.4th at 100. Here, a good faith belief that the speech at issue is protected by the First Amendment is not a defense to a sanctions action brought pursuant to Connecticut's new rule. And Rule 8.4(7) is not limited to harassment or discrimination that is knowing or intentional; to the

contrary, it has potential application to attorneys who may inadvertently offend their audience.  *Cf. Greenberg v. Lehocky*, 81 F.4th 376, 385–86 (3d Cir. 2023), *cert denied*, 144 S. Ct. 1393 (2024) (finding that an attorney lacked standing to challenge a similar rule of professional conduct in Pennsylvania because that rule did *not* extend to inadvertent conduct and required an attorney to act "knowingly").[13]

Although the First Amendment carve-out may make it more likely that the SGC will conclude that some speech that would otherwise fall within the text of Rule 8.4(7) is not in fact proscribed, the carve-out is not enough, on its own, to render Appellants' fear of a misconduct complaint and its professional repercussions "imaginary or wholly speculative" for Article III purposes.  *Babbitt*, 442 U.S. at 302; *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103 n.17 (1981) (noting that an exception to a speech restriction that permits constitutional speech "d[oes] little to narrow the scope of the limitation on speech" because speakers can still be required to defend the constitutionality of their speech and are at risk of "after-

---

[13] *Greenberg* is distinguishable from the instant case due to distinctions between Pennsylvania's Rule of Professional Conduct 8.4(g), also patterned on the ABA's Model Rule 8.4(g), and Connecticut's significantly broader rule, as well as interpretive guidance provided in Pennsylvania but not here.  There, the Third Circuit determined that the plaintiff lacked standing to challenge Pennsylvania's rule because the plaintiff's planned speech was not arguably prohibited.  The Third Circuit reached this conclusion in part because Pennsylvania's rule, unlike Connecticut's, "prohibits only harassment and discrimination that is knowing or intentional." 81 F.4th at 385.  In addition, the Chief Disciplinary Counsel there had reviewed the plaintiff's "planned presentations, speeches, and writings and stated they do not violate the Rule" and the Office of Disciplinary Counsel had interpreted Pennsylvania's rule not to prohibit "general discussion of case law or 'controversial' positions or ideas." *Id.* at 386.

the-fact" liability). The question of what speech is protected by the First Amendment often requires careful consideration of its content and surrounding circumstances, especially when considering the speech of lawyers outside the familiar context of the courtroom, where "[o]bedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991) (quoting *In re Sawyer*, 360 U.S. 622, 646–47 (1959) (Stewart, J., concurring in the judgment)). Simply put, a blanket First Amendment carve-out is not enough to negate Appellants' reasonable fear that their proposed speech may be proscribed by Rule 8.4(7).

*Third*, and finally, Appellants have demonstrated that they face a credible threat of enforcement. Whether a threat of enforcement is credible "necessarily depends on the particular circumstances at issue, and will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Picard*, 42 F.4th at 98. Appellants contend that the initiation of disciplinary proceedings against them under Rule 8.4(7) is likely enough. In evaluating whether this is so, we consider, among other factors, the presumption that the government intends

to enforce its laws, the recency of the applicable regulation, the general extent of enforcement against similar conduct, and whether there has been any specific disavowal of enforcement against a plaintiff or his conduct. *See Vitagliano*, 71 F.4th at 138–39. Here, Appellees focus on only the last two factors. They do not contend that they will not enforce Rule 8.4(7), nor can they contest that Rule 8.4(7) is a recent enactment.

Appellees nonetheless argue that Appellants' fear of enforcement is not credible because Appellees have neither sanctioned anyone for similar conduct under the prior version of Rule 8.4(7), nor sanctioned anyone since Rule 8.4(7) became operative. Appellees' Br. at 16. We disagree. The lack of sanctions is unpersuasive because Rule 8.4(7) is a new rule and, at the time Appellants filed this pre-enforcement challenge, there was no history of non-enforcement from which we could infer a lack of future intent to enforce it.[14] *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) ("[T]he history of enforcement[] carries little weight when the challenged law is relatively new." (internal quotation marks omitted)). As we have said before, evidence of past enforcement, though relevant, is not

---

[14] That the SGC has not sanctioned anyone while it is actively litigating the constitutionality and contours of Rule 8.4(7) is also unpersuasive because it may be making strategic choices in the context of litigation to which it is not bound after the litigation ends. *See Picard*, 42 F.4th at 99 (explaining that because the government is not "forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation," its interpretation is not dispositive).

"*necessary* to make out an injury in fact." *Vitagliano*, 71 F.4th at 139. Further, the history leading up to the enactment of Rule 8.4(7) reflects an intent to go *beyond* the precursor to Rule 8.4(7) to reach conduct, for instance, not only in the course of representing a client, but also in the context of "participating in bar association, business or professional activities or events in connection with the practice of law." Conn. R. Pro. Conduct 8.4 cmt; *see also* Joint App'x 17–18, Compl. ¶ 49 (noting Rule 8.4(7)'s "new focus on events unrelated to client representation"). Accordingly, the lack of an earlier enforcement history does not evince a lack of intent to enforce the new rule. *See Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) (holding that plaintiff abortion providers had established a credible threat of prosecution under state laws criminalizing abortions in part because recent amendments "cast doubt on whether North Carolina is truly disinterested in enforcing" those laws). And nothing in the limited history of Rule 8.4(7) overcomes the general presumption that the government will enforce the laws it enacts. *Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013) ("[N]either this Court nor the Supreme Court has required much to establish [a credible threat of enforcement] in challenges to ordinary criminal or civil punitive statutes. Rather, we have presumed that the government will enforce the law.").

Appellees once again point to the First Amendment carve-out, arguing that because they have "disavowed both the authority and the intent to enforce against protected speech," there is no credible threat of enforcement against Appellants. Appellees' Br. at 16. But the First Amendment carve-out is not a disavowal of enforcement against Appellants or their contemplated speech.[15] *See Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (per curiam) (listing disavowal of enforcement *against plaintiffs* as a factor in analyzing credible threat of enforcement); *cf. Buscemi v. Bell*, 964 F.3d 252, 260 (4th Cir. 2020) (accepting a stipulation that the statute in question would not be applied *to the plaintiff* in concluding that plaintiff had failed to allege a credible threat of enforcement and thus lacked standing). While Appellees contend that the carve-out shows that those involved in the grievance procedures will be cognizant of First Amendment principles when enforcing Rule 8.4(7), its uncertain reach—as evidenced by

---

[15] This fact distinguishes this case from *Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014), on which Appellees principally rely. In concluding that the plaintiff there did not face a credible threat of enforcement, the First Circuit noted that the challenged statute contained "explicit rules of construction protecting First Amendment rights." *Id.* at 798. And the government in that case had also "disavowed any intention to prosecute plaintiffs for their stated intended conduct because, in its view, that conduct [was] not covered" by the statute. *Id.* at 799. Moreover, our sister circuit gave "[p]*articular weight*" to the Government's explicit disavowal "of any intention to prosecute on the basis of the Government's own interpretation of the statute and its rejection of plaintiff's interpretation as unreasonable." *Id.* at 798. (emphasis added). Here, Appellees have neither addressed the speech outlined in the complaint, nor articulated their own understanding of Rule 8.4(7), so as to address uncertainty as to its scope. The First Amendment carve-out on which Appellees so heavily rely, moreover, falls far short of a set of "explicit rules of construction" aimed at protecting First Amendment rights. *Id.*

Appellees' inability to answer whether specific examples of speech constitute professional misconduct under Rule 8.4(7)—makes differing interpretations of Rule 8.4(7)'s scope likely. And we are not permitted to place Appellants' First Amendment rights "at the sufferance" of the SGC. *Vt. Right to Life Comm.*, 221 F.3d at 383.

Appellees finally argue, invoking *Clapper*, 568 U.S. 398, that their multistage grievance procedures render Appellants' fears unreasonable because a "long string of hypothetical events would have to occur for [Appellants] to be disciplined." Appellees' Br. at 21. Again, we disagree. *Clapper*, which did not involve the threat of an enforcement action, in no way abrogated, and in fact reiterated, the Supreme Court's precedent that standing may exist when an individual is subject to the substantial risk of an enforcement action that he claims deters his exercise of constitutional rights. 568 U.S. at 414 n.5. Indeed, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 573 U.S. at 158.

"[A]dministrative action, like arrest or prosecution," moreover, even when discipline does not ensue, "may give rise to harm sufficient to justify pre-enforcement review." *Id.* at 165; *see also Abbott v. Pastides*, 900 F.3d 160, 179 (4th

Cir. 2018) (reasoning that a threatened administrative inquiry could confer standing if it "imposes some significant burden, independent of any ultimate sanction"). Though Connecticut's grievance process is multistage, injuries may arise early in the process. *Cf. Susan B. Anthony List*, 573 U.S. at 165–66 (noting that a pre-election probable cause finding that a candidate violated a prohibition on making false statements during a political campaign could itself be viewed by the public as a sanction). Grievance complaints become a matter of public record as soon as the initial grievance panel makes a probable cause determination. Conn. R. Super. Ct. § 2-32(k). And attorneys may be forced to divert time and resources defending against Rule 8.4(7) complaints even if their speech is ultimately deemed protected by the First Amendment.

The threat of enforcement resulting in discipline, moreover, is itself both credible and substantial. As already noted, Appellees have not disavowed enforcement of the new rule. *See Susan B. Anthony List*, 573 U.S. at 165. And here, as in *Susan B. Anthony List*, the "universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations," but extends to any person. *Id.* at 164. Moreover, the complaint alleges that members of the Connecticut bar have made clear that they view Rule 8.4(7) as

prohibiting speech like that contemplated by Appellants and that they intend to pursue disciplinary action against attorneys who engage in such speech. *See* Joint App'x 18–19, Compl. ¶ 54. And most significantly, Appellees point to no guidelines for the State Bar Counsel and the SGC, beyond the general First Amendment carve-out, that might inform the exercise of judgment in the application of Rule 8.4(7). In such circumstances, we cannot conclude that Appellants' fear of enforcement is "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

At this stage in the proceedings, Appellants have alleged plausibly that they intend to engage in speech proscribed, at least arguably, by a recently enacted, focused regulation. This gives rise to a credible threat of enforcement. *See Vitagliano*, 71 F.4th at 139; *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) ("'[W]hen dealing with pre-enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" (quoting *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996))). Appellants have thus adequately alleged an injury in fact for Article III standing. They have additionally pleaded causation

and redressability because their injury is fairly traceable to Rule 8.4(7) and can be addressed by their requested relief.  *See Lujan*, 504 U.S. at 560–61.  Accordingly, Appellants have adequately pleaded that they have standing to bring this challenge to Rule 8.4(7).[16]

## CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND to the district court to consider, in the first instance, whether the Eleventh Amendment bars plaintiffs' claims.

---

[16] We acknowledge that "the proof required to establish standing increases as the suit proceeds," even as "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  Here, inferences appropriate when considering Appellees' motion to dismiss may be inappropriate when weighing a motion for summary judgment.  We express no view as to whether Appellants have established standing at any later stage of these proceedings.